Jane DOE, Plaintiff and Appellant,

v.

Shirlene HAFEN, as personal representative ad litem of the Estate of Melvin Reeves, Defendant and Respondent (Two Cases).

Nos. 870310–CA, 870514–CA.

Court of Appeals of Utah.

April 7, 1989.

Robert J. Debry and Daniel F. Bertch, Salt Lake City, for plaintiff and appellant.

M. Dayle Jeffs, Provo, for defendant and respondent.

Before DAVIDSON, GARFF and ORME, JJ.

## OPINION

DAVIDSON, Judge:

A jury awarded plaintiff $10,000 special damages and $20,000 general damages for injuries she received when the motorcycle on which she was riding collided with an automobile driven by Melvin Reeves. Dissatisfied with the amount of the verdict, plaintiff appeals. We affirm in part and reverse in part.

## ISSUES

Plaintiff claims the trial court committed numerous reversible errors. We have reviewed these claims and find most of them meritless. Therefore, we address only the following issues: Should the court have asked plaintiff's proposed voir dire questions? Should the court have allowed Reeves's widow to sit at counsel table during voir dire? Did the court properly admit evidence of plaintiff's miscarriage and voluntary sterilization? Did the court award prejudgment interest as required by Utah Code Ann. § 78–27–44 (1987)?

## VOIR DIRE

Plaintiff proposed certain voir dire questions which the judge refused to ask. These questions fell into three groups. The first group consisted of general background questions concerning each prospective juror's age, educational background, length of residency in the county, etc. The second group consisted of questions that in one way or another mentioned or alluded to liability insurance. The questions in the third group queried whether the prospective jurors had formed opinions about high damage awards because of "tort reform propaganda." We will address each of these groups separately.

Voir dire has two distinct purposes: 1) to detect bias sufficient to challenge for cause and 2) to collect data to permit an intelligent use of premptory challenges. *State v. Worthen*, 765 P.2d 839, 844 (Utah 1988); *Hornsby v. Corporation of the Presiding Bishop*, 758 P.2d 929, 932 (Utah App.1988), *cert. denied*, 98 Utah Adv.Rep. 3 (1988). Accordingly, the trial judge should liberally allow questions "designed to discover attitudes and biases, both conscious and subconscious," even though such questions go beyond that needed for challenges for cause. *Worthen*, 765 P.2d at 845.

Plaintiff argues that questions such as "what magazines do you subscribe to" and "what is the highest level of education received" are necessary to reveal attitudes and biases.[1] We are not convinced that these questions either necessarily elicit the information needed, *see United States v. Bosby*, 675 F.2d 1174, 1184 (11th Cir.1982), or are relevant to attitudes and biases in a negligence action. *See State v. Ball*, 685 P.2d 1055 (Utah 1984). Generally, judges should not permit inordinately extensive and unfocused questioning. *People v. Williams*, 29 Cal.3d 392, 174 Cal.Rptr. 317, 628 P.2d 869, 877 (1981). Judges have a duty to protect jurors' privacy. *Ball*, 685 P.2d at 1060. As long as counsel is "afforded an adequate opportunity to gain the information necessary to evaluate jurors," *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988), it is within the discretion of the trial judge to limit voir dire. *Hornsby*, 758 P.2d at 932. Furthermore, whether the judge has abused that discretion is determined,

---

1. In the case at bar, the judge refused to ask the following questions:
   1. How long have you lived in Washington County?
   2. If you have lived here less than ten (10) years, where did you move from?
   3. What is your age?
   4. What magazines do you subscribe to?

   5. What is the highest level of education received?
   6. What degrees have you received?
   . . . .
   9. Do you regularly use a seat belt?
   . . . .
   15. Do you know of any friend or family member who has a restricted driver's license?

not by considering isolated questions, but "considering the totality of the questioning." *Bishop*, 753 P.2d at 448.

■ We have reviewed the totality of the general background questions asked by the trial judge and find they were adequate.[2] The judge asked about the prospective jurors' place of residence, marital status, children, occupation (including that of their spouses), whether or not each drove a car, familiarity with motorcycles and whether they or close relatives rode motorcycles, prior familiarity with and any opinions about similar accidents, lawsuits, certain types of injuries, and familiarity with the parties, attorneys and witnesses. Under these circumstances, we find the voir dire as a whole sufficient to allow counsel to examine the jurors for challenges for cause and to use plaintiff's premptory challenges skillfully. We find no abuse of discretion in the refusal to ask plaintiff's proposed questions.

■ Plaintiff also argues that the judge should have inquired into the prospective jurors' relationship with and attitudes about liability insurance companies. Under some circumstances, parties have a right to establish a juror's relationship or interest in the insurance company that will pay the damage award. *Balle v. Smith*, 81 Utah 179, 17 P.2d 224 (1932); *Kilpack v. Wignall*, 604 P.2d 462, 463 n. 1 (Utah 1979). However, that limited inquiry into liability insurance must be made in good faith, *Balle*, 17 P.2d at 229, and not made for the purpose of informing the jurors that an insurance company is involved. *See Williams*, 628 P.2d at 877. Plaintiff proposed a series of questions with the obvious purpose of informing the jury about the existence of liability insurance. Such a purpose was in bad faith and the judge was within his discretion in refusing to ask the questions.

Plaintiff did include one question in the series that may have, by itself, been proper.[3] However, after the judge rejected the whole series, plaintiff made no attempt to call the judge's attention to that specific question. A party must make "known to the court the action which he desires ... or his objection to the action of the court and his grounds therefor...." Utah R.Civ.P. 46. This means, to preserve a question for appeal, an objection must be clear and concise and made in a "fashion calculated to obtain a ruling thereon." *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 837 (Utah 1984); *see also, Lamkin v. Lynch*, 600 P.2d 530, 532 (Utah 1979) (the objection, "I take general exception to the failure to give Plaintiff's Requested Instructions," was insufficient to give the court notice of error).

■ The judge also asked whether anyone had read or experienced anything that would affect the amount of compensation they would be willing to award in a verdict. Plaintiff claims that this general question is not sufficient to reach any deep-rooted bias caused by "tort reform propaganda." "Tort reform propaganda" is plaintiff's term for newspaper and magazine articles that blame the high cost of insurance and the resulting loss of certain medical personnel on large-dollar jury damage awards. Plaintiff claims the judge should have asked specifically whether the prospective jurors had read any such "tort reform propaganda."

We find the reasoning in *Borkoski v. Yost*, 182 Mont. 28, 594 P.2d 688 (1979), compelling. In *Borkoski*, the Montana Supreme Court balanced the problem of selecting an impartial jury, after exposure to such articles, against the prejudice injected into the trial by the questioning itself, particularly where the extent of the exposure was not initially known to the court. *Borkoski* held that before any specific ques-

---

**2.** We find no occasion to consider whether the scope of voir dire for civil trials is different than for criminal trials. Certainly, interests of judicial economy may be more compelling in a civil trial where the constitutional protections afforded criminal defendants are not present.

**3.** The question read: "Do any of you own stock in any liability insurance company?" Since we dispose of the issue on other grounds, we need not decide whether the language of this question presented the proper manner to query the prospective jurors about any interest in the relevant insurance company.

tioning about the articles would be allowed, either of two alternative types of preliminary questions must be asked: "[W]hether the prospective juror has heard of or read anything … which might affect his ability to sit as an impartial juror … or … whether the prospective juror reads any of the magazines or newspapers in which it has been demonstrated that the … articles had appeared." *Borkoski*, 594 P.2d at 695.

We adopt the analysis in *Borkoski* and apply it to the instant case. The trial judge asked a broad preliminary question as to whether the prospective jurors had read or experienced anything that would affect the amount of compensation they would be willing to award. No prospective juror said yes. Plaintiff made no attempt to show that any of the prospective jurors had read any specific magazines that published the propaganda or were otherwise influenced by such articles. In fact, plaintiff never mentioned any specific articles that she believed would have biased the prospective jurors. Accordingly, since neither of the *Borkoski* prerequisites to particular questioning were met, we conclude the judge properly refused to continue questioning the prospective jurors about the articles.[4]

## PREJUDICIAL CONDUCT

■ At trial, defendant was allowed to have Mrs. Florence Reeves, Melvin Reeves's aged widow, sit at counsel table and assist during jury selection. Mrs. Reeves was apparently very old and feeble and she appeared with her oxygen tank and nose tubes. The judge told the prospective jurors that Mrs. Reeves was not a party to the action but was only present to assist defense counsel. As soon as voir dire concluded, Mrs. Reeves left the courtroom and did not return again anytime during the three days of the trial.

Plaintiff claims that Mrs. Reeves should not have been permitted to sit at counsel's table because her presence was prejudicial and led the jury to sympathize with her and caused them to believe that any damage

award would come from her pocket. We do not agree. A judge has considerable latitude in conducting a trial. *Xenakis v. Garrett Freight Lines, Inc.*, 1 Utah 2d 299, 265 P.2d 1007 (1954) (judge held session in the evening and also permitted one witness to stay even though witnesses had been excluded); *Utah State Rd. Comm'n v. Marriott*, 21 Utah 2d 238, 444 P.2d 57 (1968) (jurors permitted to view property in question). As *Xenakis* noted, "[I]t is common practice to allow one witness, having special knowledge … to remain in the courtroom to advise counsel concerning the progress and management of the trial," but that is a matter within the sound discretion of the trial court. *Xenakis*, 265 P.2d at 1012. Granted, the judge should not allow a party to use "play acting" designed to build sympathy or passion in the jurors. *See Eager v. Willis*, 17 Utah 2d 314, 410 P.2d 1003, 1007 (1966). However, unless the judge abused his discretion we will not second guess his decision.

In the instant case, the judge allowed nonparty persons to sit at *both* defendant's and plaintiff's tables to assist with voir dire. The judge told the jurors who Mrs. Reeves was and why she was present. Furthermore, the judge took particular care to explain that Mrs. Reeves was not a party to the action. There is no evidence that defense counsel engaged in any play acting or other improper behavior. Under such circumstances, the trial judge did not abuse his discretion.

## ADMISSION OF EVIDENCE

■ At trial, plaintiff alleged that the injuries she received in the accident included brain damage. To show this brain injury, plaintiff introduced evidence that she suffered memory loss, personality changes, lack of control over emotions, and other mental functioning problems after the accident. Plaintiff's expert witness, Dr. Linda Gummow, testified that she relied on these symptoms in forming her opinion that plaintiff did suffer brain damage in the

4. In adopting the *Borkoski* rule, we do not imply that counsel must show both prerequisites. The prerequisites are alternative so only one or the other must be shown.

accident. On cross-examination, Dr. Gummow admitted that depression causes symptoms similar to plaintiff's and that in some persons voluntary sterilization could cause depression. Dr. Gummow did not know of plaintiff's miscarriage and voluntary sterilization at the time she formed her opinion. Dr. Gummow said the fact of the miscarriage would not affect her opinion, but she could not say whether the sterilization would.

Defendant introduced the testimony of Dr. David Weight. He also had examined plaintiff. Dr. Weight testified that he found indications that plaintiff suffered from depression. Dr. Weight also testified that events such as a miscarriage or a sterilization could cause depression.

Plaintiff asserts that disclosure of her miscarriage and sterilization was inflammatory and, therefore, admitted into evidence in error. However, we will not disturb the judge's ruling on the admissibility of evidence unless the admission was clearly in error. *Belden v. Dalbo, Inc.*, 752 P.2d 1317, 1319 (Utah App.1988). Furthermore, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Utah R.Evid. 103. On appeal, the party alleging error has the burden to show both that the error occurred and that it substantially affected its rights. *Barson*, 682 P.2d at 838.

Plaintiff has failed to meet this burden. The miscarriage and sterilization evidence was logically relevant. Apparently, plaintiff attempted to establish that she suffered from brain damage by offering evidence of her mental and emotional state. However, the symptoms, of which she complained, could have been caused by depression as well as brain damage. Evidence of such an alternative cause was highly relevant. Plaintiff argues that the probative value of the miscarriage and sterilization evidence was substantially outweighed by its prejudicial value. As evidence of such prejudice, plaintiff offers only a bare assertion that jurors in small towns are somehow more susceptible to bias because of such evidence than other jurors. The trial judge listened to both sides and afterward admitted evidence of the miscarriage and the sterilization. Since there is substantial evidence to support the trial court's rulings, we cannot say those decisions were clearly erroneous.

## PREJUDGMENT INTEREST

◼ Plaintiff's final claim is that the trial court did not properly award prejudgment interest on the special damages. The judgment provided for "interest thereon as provided by law." However, the judge subsequently ruled that plaintiff was not entitled to prejudgment interest.

On appeal, defendant concedes that plaintiff is entitled to prejudgment interest on the stipulated medical expenses of $6,747.67. This amount is in accord with *Gleave v. Denver & Rio Grande Western R.R. Co.*, 749 P.2d 660, 673 (Utah App. 1988), *cert. denied*, 765 P.2d 1278 (Utah 1988), where we held that Utah Code Ann. § 78-27-44 (1987) only provided interest on that portion of special damages which were the result of "out-of-pocket expenses." We, therefore, direct the trial court to amend the judgment to include interest on the $6,747.67 calculated according to Utah Code Ann. § 78-27-44.

The judgment of the trial court is affirmed in part, and reversed and remanded for a determination of prejudgment interest.

GARFF, J., concurs.

ORME, J., concurs in the result.