Ralph OSTLER, Plaintiff and
Appellant,

v.

ALBINA TRANSFER COMPANY, INC.,
Stanley E. Wheeler, and F & R Roe,
Inc., Defendants, Third–Party Plaintiffs
and Respondents,

v.

Wanda OSTLER, Stephen K. Ostler, Gary
W. Ostler, Vyron R. Ostler, Dale F. Ostler, Donnell B. Ostler, Sonda Mae
Ostler, Ralph O. Ostler, Brian L. Ostler,
Carlyle E. Ostler, Margaret Ostler, and
Nathan J. Ostler, as heirs of Stephen
Ostler, Gary Ostler, Dale Ostler, and
Eugene Ostler, d/b/a Go Cars, Third–
Party Defendants.

No. 880228–CA.

Court of Appeals of Utah.

Sept. 8, 1989.

Rehearing Denied Oct. 19, 1989.

Robert J. DeBry, Daniel F. Bertch, Warren W. Driggs, and Dale F. Gardiner (argued), Salt Lake City, for plaintiff and appellant.

M. Dayle Jeffs (argued) and Robert L. Jeffs, Provo, for defendants, third-party plaintiffs and respondents.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

BENCH, Judge:

Plaintiff appeals from a jury verdict against him in a negligence action. We affirm.

On the night of April 18, 1984, plaintiff Ralph Ostler was accompanying his father Stephen home to Utah from a business trip to California. At approximately 3:00 a.m., the Ostler's compact pickup was northbound on Interstate 15, a few miles south of Payson, Utah. Stephen Ostler was driving. For unknown reasons, the pickup left the lane of traffic and struck the rear of a truck and semitrailer unit parked on the paved shoulder of the roadway. Stephen Ostler was killed instantly. Plaintiff, who had been sleeping on the bed of the pickup, was thrown onto the roadway and critically injured.

Plaintiff was paralyzed from the waist down as a result of his injuries. He brought a personal injury action in the district court against the driver of the semitrailer (defendant Stanley E. Wheeler), the driver's employer (defendant Albina Transfer Co., Inc.), and the semitrailer owner (defendant F & R Roe, Inc.). During the five-day trial, plaintiff conceded that Stephen Ostler was negligent and partially at fault for the accident. Early in the trial, the court determined that Wheeler was also negligent and directed a verdict of negligence against him. The basis for this ruling was that Wheeler had parked his semitrailer on the shoulder of a controlled access highway in violation of Utah Code Ann. § 41–6–103(1)(i) (1988). The court reserved the issue of whether Wheeler's negligence was a "proximate cause" of the accident. The jury eventually concluded that Stephen Ostler's negligence was the "intervening and sole proximate cause" of plaintiff's injuries, and rendered a special

verdict for defendants. Plaintiff appeals from the verdict, alleging numerous errors.

## VOIR DIRE

◼ We first address plaintiff's claim that jury voir dire was inadequate to reveal bias related to a "tort reform" advertising campaign conducted by a national insurance company. It is obvious from the trial transcript that the gist of plaintiff's questions went to the issue of potential juror bias against large monetary awards.

Rule 47(a) of the Utah Rules of Civil Procedure requires the court to permit the parties to supplement voir dire with questions that are material and proper. However, the court has considerable discretion to "contain voir dire within reasonable limits." *Hornsby v. Corporation of the Presiding Bishop*, 758 P.2d 929, 932–33 (Utah Ct.App.1988). Whether that discretion has been abused is determined from the totality of the questioning. *Doe v. Hafen*, 772 P.2d 456, 457–58 (Utah Ct.App.1989).

In lieu of plaintiff's proposed questions, the judge informed the venire that plaintiff's claim may exceed a million dollars and asked if any would object to an award of that magnitude. None did. The judge also asked if any of the prospective jurors believed that people should not resort to the courts to settle disputes or recover damages for injuries. Again, none did. The judge followed with a question asking whether any believed they were incapable of rendering a fair and true verdict based on the evidence. None responded affirmatively. In their totality, and in context with the remainder of voir dire, these questions are substantively responsive to plaintiff's concerns and appear sufficient to reveal "tort reform" bias in the manner discussed in *Doe*, 772 P.2d at 458–59. Plaintiff, therefore, has not shown an abuse of discretion in the court's voir dire of prospective jurors.

## EXPERT TESTIMONY

Plaintiff argues that the trial court improperly rejected his evidence on the issue of proximate cause, resulting in prejudicial error. All of this evidence was in the form of proffered testimony from two experts. The excluded evidence covered a variety of topics, including a scientific theory referred to as the "moth phenomenon," certain federal motor carrier regulations, road safety and design, and a videotape prepared for plaintiff that purported to show what would have happened if the semitrailer had not been unlawfully parked.

◼ The general rule regarding the admission or exclusion of evidence is that the trial court's decision will not be overturned in the absence of an abuse of discretion. *Pearce v. Wistisen*, 701 P.2d 489, 491 (Utah 1985). Witnesses qualified as experts may testify if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Utah R.Evid. 702. However, "[i]t is within the discretion of the trial court to determine the suitability of expert testimony in a case and the qualifications of the proposed expert." *State v. Clayton*, 646 P.2d 723, 726 (Utah 1982) (decided under former rule). Although such testimony may be relevant, it may be excluded if the court determines "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R.Evid. 403. The probative value of evidence is determined on the basis of need and "its ability to make the existence of a consequential fact either more or less probable." *State v. Johnson*, 115 Utah Adv.Rep. 6, 8 (1989) (quoting *State v. Williams*, 773 P.2d 1368, 1370 (Utah 1989)).

◼ We have examined the record and can find no abuse of discretion in the trial court's decision to exclude the testimony of two of plaintiff's seven experts. It is quite clear that the reason or reasons why Stephen Ostler's vehicle slammed into the rear of Wheeler's semitrailer could not be established. Plaintiff's case relied significantly on scientific evidence of the "moth phenomenon," a theory that motorists are "lured" at night to the lights of parked vehicles.

Even if such a theory is admissible under the threshold requirement of inherent reliability, *see State v. Rimmasch*, 775 P.2d 388, 398–99 (Utah 1989), the theory is premised on the fact that a driver must be awake in order to be so "lured." Plaintiff's own expert admitted that there was no conclusive way to determine Stephen Ostler's state of consciousness prior to the accident. Nor does the theory necessarily establish causation because plaintiff's expert conceded that none of the factors triggering the moth phenomenon were proven. Without this foundation, the court determined that the expert testimony on the moth phenomenon would not be helpful to the jury, and furthermore, that it would be prejudicial to present an opinion based on such pure conjecture.

This is consistent with the principle that "any expert evidence, scientifically based or otherwise" must, on balance, "be helpful to the trier of fact." *Id.* at 398 n. 8. Such evidence must be scrutinized carefully to avoid the "tendency of the finder of fact to abandon its responsibility to decide the critical issues and simply adopt the judgment of the expert despite an inability to accurately appraise the validity of the underlying science." *Id.* at 396. Whether the probative value of evidence is substantially outweighed by its prejudicial effect is a determination within the sound discretion of the trial court. *State v. Johnson*, 115 Utah Adv.Rep. at 9. Under rules 403 and 702 of the Utah Rules of Evidence, we conclude that the trial judge was within his discretion to exclude the testimony.

■ Similarly, the trial court concluded that plaintiff's videotaped demonstration was more apt to be confusing to the jury than helpful. The videotape depicted a compact pickup truck driving off the roadway at the actual accident location. It purported to show that no mishap would have occurred had Wheeler's truck not been parked on the road shoulder. Plaintiff first argues that the videotape was for illustrative purposes and was proper under *Millers Nat'l Ins. Co. v. Wichita Flour Mills Co.*, 257 F.2d 93 (10th Cir.1958) and other cases. It is obvious, however, that the film did not illustrate the accident, but rather portrayed plaintiff's prediction of events under a different set of facts. As such, the potential for unfair prejudice as illustrative evidence was significant, and the trial court was within its discretion to exclude it.

Plaintiff alternatively argues that the videotape was admissible as evidence. Plaintiff cites *DiRosario v. Havens*, 196 Cal.App.3d 1224, 242 Cal.Rptr. 423 (1987) for the proposition that experimental evidence is admissible provided it is conducted under substantially similar conditions as that of the actual incident. "The standard that must be met in determining whether the proponent of the experiment has met the burden of proof of establishing the preliminary fact essential to the admissibility of the experimental evidence is whether the conditions were substantially identical, not absolutely identical." *Id.* 242 Cal.Rptr. at 426 (quoting *Culpepper v. Volkswagen of America, Inc.*, 33 Cal.App.3d 510, 521, 109 Cal.Rptr. 110 (1973)). *DiRosario* imposes two other requirements—that the experimental evidence be relevant and not consume undue time, confuse the issues, or mislead the jury. *Id.* 242 Cal.Rptr. at 426.

In *Whitehead v. American Motors Sales Corp.*, 101 Utah Adv.Rep. 27 (1989), the Utah Supreme Court discussed the *Culpepper* three-prong test in determining the admissibility of motor vehicle crash test films. The court upheld the admission of the films into evidence and held that certain discrepancies between the films and the actual accident went to weight, rather than admissibility. The circumstances of the accident were known and the films were offered to show the handling characteristics of similar vehicles.

In this case, application of the *Whitehead* test supports exclusion of the evidence. Plaintiff admits that the videotape differed from the actual accident in that the videotape was produced during daylight conditions and employed an alert, professional stunt driver. He further argues that even with these discrepancies, the demonstration was substantially similar.

It appears, however, that the conditions of the film's production were far from similar to the actual accident. The differences in lighting and driver alertness and skill were crucial. The literal controversy of this lawsuit is the inexplicable departure of a vehicle from the lane of traffic. The videotape does not, and cannot, depict the conditions that caused that departure. Any other depiction is, as the trial court concluded, not reconstruction, but speculation. In contrast to *Whitehead*, the circumstances of this accident are not known, and there is no indication that the design characteristics of vehicles were responsible. The discrepancies between the film and plaintiff's accident seem to go beyond weight. Since the film would not "make the existence of any fact ... of consequence ... more probable than not" under Utah R.Evid. 401, we are not convinced plaintiff has satisfied the first two prongs of similarity and relevance under the *Whitehead* test.

Even giving plaintiff the benefit of our doubt as to the film's relevance and similarity, we conclude that, in any event, the trial court properly excluded the videotape as substantive evidence on the grounds of potential confusion. *See* Utah R.Evid. 403. Under *Whitehead*'s third prong, such evidence may be excluded in the court's discretion even if it is relevant, when a determination is made that it may confuse or mislead. 101 Utah Adv.Rep. at 31 (trial court upheld although unclear whether court excluded evidence under rule 401 or 403, either theory of exclusion being proper). Since plaintiff has not demonstrated that the finding of potential confusion was an abuse of the court's discretion, we hold that the videotape was properly excluded.

■ We last address plaintiff's claim of error regarding the exclusion of evidence on federal motor carrier regulations and road safety and design. Plaintiff argues that this evidence was relevant to the issue of foreseeability under his theory of concurrent negligence. Plaintiff quotes *Godesky v. Provo City Corp.*, 690 P.2d 541, 545–46 (Utah 1984):

The law does not necessarily recognize only one proximate cause of an injury, consisting of only one factor, one act, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause and both may be held responsible.

We have examined the record and agree that some of this evidence may be relevant to the issue of foreseeability. Other evidence goes to the issue of Wheeler's negligence, a matter previously decided by directed verdict, and may be excluded as irrelevant. *See* Utah R.Evid. 402 ("Evidence which is not relevant is not admissible."). The court excluded the relevant portions of the expert's proffered testimony on the grounds that such evidence would not be particularly helpful to the jury. The court believed that the jury was as capable as the expert to make the determination of foreseeability. We agree, in any event, plaintiff has failed to carry his burden of showing that the claimed error was substantial and prejudicial. *See Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987); Utah R.Civ.P. 61. In the absence of such a showing, we consider plaintiff's claim to be without merit.

## IMPEACHMENT

■ Plaintiff argues that the court's refusal to permit him to show that Wheeler may have been parked on the shoulder of the highway for as long as thirty minutes unduly restricted cross-examination. Although plaintiff concedes that the trial judge has broad discretion in regulating the scope of such testimony, *see, e.g., Whitehead*, 101 Utah Adv.Rep. at 28, he claims that the court abused its discretion by misapplying the law. Plaintiff claims that he was attempting to show consistency with prior deposition testimony, and the court ruled that only prior inconsistent statements may be compared.

It is unnecessary to resolve this argument when the alternate basis for the court's ruling is considered, namely, that the question of how long Wheeler had been parked ultimately went to the issue of Wheeler's negligence. Since that issue had been resolved by directed verdict, the excluded testimony was irrelevant. Similarly, plaintiff claims that he was not permitted to impeach Wheeler with Wheeler's "prior bad acts," specifically, Wheeler's violation of federal motor carrier regulations. These acts also concerned the issue of Wheeler's negligence and were properly excluded.

## CLOSING ARGUMENT

■ Plaintiff complains of statements made by defense counsel during closing argument. Defense counsel made the following remark:

This case is to decide whether Wheeler, ... F & R Roe and Albina are to pay for the injuries to Ralph, when Wheeler's actions were not the cause of the accident.

Plaintiff timely reserved an objection out of the presence of the jury. He now argues that the statement was improper, prejudicial, and untrue for the reason that "any recovery would come from the insurance carrier," and that the remark unfairly implies that defendants would personally pay any damage award.

We are not convinced that there is any impropriety in this remark. Simply put, it reflects the fact that judgment would be rendered against the various defendants under joint and several liability, and does not indicate the source of funds to pay such a judgment. It does not inappropriately state that insurance would or would not pay any judgment, *see* Utah R.Evid. 411, thus improperly eliciting sympathy or tempering the size of any award. *Cf. Priel v. R.E.D., Inc.*, 392 N.W.2d 65 (N.D.1986) ("We are talking about money that my client will have to pay *out of his own pocket.*" (emphasis added)). We conclude that the remark was not unfairly prejudicial.

■ Plaintiff also objected to the following portion of defendants' closing argument:

[T]he foreseeability question is: How was Stan Wheeler expected to foresee that at that precise time if, as Mr. DeBry said, one in a billion chances that it would happen right at that particular time—

Plaintiff argues that this was a misstatement of the law because "foreseeability relates to whether accidents of this general nature might happen." He further asserts that the statement was prejudicial and that "[t]he only explanation for [the] verdict is that the jury was confused by [defense counsel's] misstatements of the law."

We disagree. Even if counsel's remarks misstated the law, any prejudicial impact appears to be negated by the court's admonishment:

The Jury is directed to look at the Instructions. They set forth the law in that regard. Statement of counsel is to be disregarded except as it is accurate.

*See Hall v. Blackham*, 18 Utah 2d 164, 417 P.2d 664, 666 (1966) (no prejudicial error shown where court admonished jury following remarks during closing argument). When considered in the context of the entire closing argument, plaintiff's objection, and the court's admonition, we conclude there was no unfair prejudice. *See generally Halford v. Yandell*, 558 S.W.2d 400, 411–12 (Mo.Ct.App.1977).

## JURY INSTRUCTIONS

Plaintiff further assigns as error two jury instructions. The first instruction involved the placement of emergency warning devices behind Wheeler's parked truck. We agree that the given instruction significantly differed from plaintiff's requested instruction. However, the instruction concerned the issue of Wheeler's negligence. We have already established that this issue had been taken from the jury. Any error could not have affected the substantial rights of plaintiff, and was, therefore, harmless.

■ Plaintiff also objects to the trial court's instruction on the issue of causa-

tion, claiming that the language is confusing and incomplete. Plaintiff sought to further define and expand the given instruction. While it is true, as plaintiff argues, that jury instructions should be "clear in meaning and concise as possible in lay people's language without belaboring definitions," *Johnson v. Cornwall Warehouse Co.*, 16 Utah 2d 186, 398 P.2d 24, 25 (1965), the adoption of plaintiff's suggestions would have run counter to this rule. Although we cannot ascertain from the record the rationale behind the trial court's overruling of plaintiff's objections, any expansion of the given instruction would have likely hindered, rather than enhanced, the jury's comprehension of the issue.

The challenged instruction must also be considered in the context of the instructions as a whole. *Madsen v. Brown*, 701 P.2d 1086, 1092 (Utah 1985); *State v. Schaffer*, 638 P.2d 1185, 1187 (Utah 1981). Other instructions propose plaintiff's theory of the case, i.e., "concurrent negligence," and add meaning to the instruction at issue. Although plaintiff contends that the jury believed that causation meant "fault," he fails to support this supposition. We cannot delve into the jury's reasoning process, and cannot speculate what "cause" the jury assigned to the accident. However, it is just as reasonable to presume, as in *Watters v. Querry*, 626 P.2d 455, 458 (Utah 1981), that the jury determined that the degree of Stephen Ostler's inattentiveness was not foreseeable. Thus, "he failed to observe the situation he should have ... [and] this later negligent act became the sole proximate cause of the collision." *Id.* Since plaintiff has failed to show that any alleged confusion was substantial and prejudicial, we reject plaintiff's claim of error.

## DIRECTED VERDICT ON CAUSATION

We last address plaintiff's argument that the trial court erred in not directing a verdict of proximate cause as a matter of law. Our review of a challenge to the denial of a motion for a directed verdict is governed by the standard described in *Penrod v. Carter*, 737 P.2d 199, 200 (Utah 1987):

A motion for a directed verdict requires the trial court to consider the evidence in the light most favorable to the party against whom it is directed. The case should not be taken from the jury where there is substantial dispute in the evidence.... On appeal, this Court applies the same rules.

(Citation omitted.) *See also Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1165 (Utah 1983).

The trial court reserved the issue of "proximate cause" after directing a verdict that Wheeler was negligent. "Proximate cause" is one of the essential elements of a negligence action, *see Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985), and is specifically "that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred." *Mitchell v. Pearson Enters.*, 697 P.2d 240, 245 (Utah 1985). Proximate causation is generally a question of fact to be determined by the jury. *Watters*, 626 P.2d at 457–58.

The trial court denied plaintiff's motions for a directed verdict on the issue of causation. Under the applicable standard of review, we are required to view the evidence in defendants' favor. That evidence, tending to establish that proximate cause was not only in substantial dispute, but was the very essence of the controversy between the parties, indicates that the trial court properly declined to remove the issue from the jury. We find no error in the ruling below.

In conclusion, none of plaintiff's claims constitute reversible error. We have reviewed other issues raised by plaintiff and find them to be without merit. The judgment is affirmed.

GREENWOOD and JACKSON, JJ., concur.