798 P.2d 1130 (1990)
Fay GAW, Plaintiff and Appellant,
v.
STATE of Utah, By and Through its DEPARTMENT OF TRANSPORTATION, Carbon County, City of Helper, Jimmy Wray Lingle, Allstate Ins. Company, an Illinois Corp., Roadrunner Trucking, a New Mexico Corp., and John Does I Through X, Defendants and Appellees.
No. 890139-CA.
Court of Appeals of Utah.
September 13, 1990.
*1132 Robert J. Debry, Edward T. Wells (argued), Daniel F. Bertch, Gordon K. Jensen, Robert J. Debry & Associates, Salt Lake City, for plaintiff and appellant.
Joy L. Sanders (argued), Jody K. Burnett, Snow, Christensen & Martineau, Salt Lake City, for Dept. of Transp.
Robert R. Wallace (argued), Scott F. Squire, Hanson, Epperson & Smith, Salt Lake City, for Roadrunner Trucking.
Before DAVIDSON,[1] BULLOCK[2] and ORME, JJ.

OPINION
ORME, Judge:
On April 16, 1984, Fay Gaw was turning left from a side street onto Highway 6 in Helper, Utah. Gaw apparently drove across a merge lane and into the through lane of traffic when she was hit by a truck driven by Jimmy Wray Lingle and owned by Roadrunner Trucking. Gaw was paralyzed from the chest down as a result of the accident. She brought suit against Lingle claiming that he had negligently operated the truck and against Roadrunner as the employer of Lingle. She also brought suit against the State of Utah claiming that the intersection was negligently designed, constructed and maintained.[3]
*1133 On January 30, 1986, Gaw's deposition was taken at the instance of Lingle. The court reporter transcribed the testimony and delivered a copy of the deposition to Gaw's attorney. On March 14, Gaw received a sheet from the reporter on which to make appropriate corrections to her deposition. In May, Gaw's attorney sought and obtained an extension of time to correct the deposition and file it with the court. Gaw made approximately fifty changes to her deposition, which were filed with the deposition in June 1986.
In July 1986, defendants moved to suppress the changes in Gaw's deposition, claiming that the corrections were not made in compliance with Utah Rule of Civil Procedure 30(e), that Gaw had given a false excuse for making substantial changes to the deposition, and that the changes would prejudice the defendants. In February 1988, the court granted defendants' motions and suppressed the changes to Gaw's deposition.
In March 1988, the state filed a motion for summary judgment. Gaw filed a motion in opposition along with her own affidavit and the affidavits of two engineers who stated their opinions that the intersection was faultily designed. The trial court granted the state's motion for summary judgment, finding that Gaw had failed to produce any evidence that the intersection was faultily designed or that such design had caused the accident.
In September 1988, a jury trial was held to determine the liability of Lingle and Roadrunner. On special verdict, the jury found Gaw 75% liable for the accident and Lingle 25% liable.
During the trial, Gaw attempted to admit testimony from a "human factors" expert to the effect that Gaw had behaved in a reasonable and prudent manner and that Lingle had not behaved reasonably under the circumstances. The trial court did not allow the expert to testify in conclusory legal terms about the reasonableness of the parties' actions. It did, however, allow the expert to testify extensively about the misleading nature of the intersection, the likelihood that Gaw was confused by the intersection markings, and the distinction between her subjective and objective confusion.
Defendants submitted three proposed jury instructions, each of which stated that the conduct described in the instructions "is negligence." Gaw objected to these instructions because they effectively incorporated a standard of per se negligence contrary to Utah law.[4] The court noted Gaw's objection but gave the instructions as tendered.
On appeal, Gaw raises three arguments. First, Gaw argues that the court improperly limited the testimony of her human factors expert. Second, Gaw challenges the jury instructions to which she objected below. Finally, Gaw argues that the court improperly granted summary judgment to the state, primarily due to the court's decision to suppress the changes Gaw sought to make to her deposition. We affirm in part, reverse in part, and remand for a new trial.

EXPERT TESTIMONY
Gaw challenges the trial court's decision prohibiting the human factors expert from testifying that Gaw's actions before the accident constituted reasonable, prudent conduct.[5] In order to prevail on this issue, Gaw must demonstrate that the trial court abused its discretion in excluding the expert testimony. Ostler v. Albina Transfer Co., 781 P.2d 445, 447 (Utah Ct.App. 1989). Moreover, she must demonstrate *1134 that "the excluded evidence would probably have had a substantial influence in bringing about a different verdict." Redevelopment Agency v. Tanner, 740 P.2d 1296, 1303-04 (Utah 1987).
The Utah Rules of Evidence provide that a witness who has been qualified as an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Utah R.Evid. 702. Moreover, that testimony may embrace "an ultimate issue to be decided by the trier of fact." Utah R.Evid. 704.
As a general rule, it is within the discretion of the trial court to determine whether a particular expert is qualified and whether particular testimony would be helpful and suitable in a particular case. Ostler, 781 P.2d at 447. However, the trial court does not properly exercise that discretion where its decision is based upon a misconception of law. In re Carmaleta B., 21 Cal.3d 482, 579 P.2d 514, 523, 146 Cal. Rptr. 623, 631-32, (1978) (en banc). See also Kirkham v. 4.60 Acres of Land, 100 Idaho 781, 605 P.2d 959, 962 (1980) (court abuses discretion when it fails to apply the law). Cf. Naranjo v. Naranjo, 751 P.2d 1144, 1146 (Utah Ct.App. 1988) (though trial court has considerable discretion in adjusting financial interests of divorced parties, appellate court will overturn decision if based upon misunderstanding or misapplication of the law).
In this case, the court based its decision to exclude the expert's testimony in large part upon its erroneous view that it was obligated to give the jury per se negligence instructions. The court stated with our emphasis:
[O]ne of the problems you have is this jury instruction that says: "If you violate the law, that's negligence. That's not what a reasonable person would do." How does that conform with [expert testimony that certain behavior is reasonable] if there is a violation of the law? ... It's just inconsistent with what the jury has to determine. In other words, even though she may have been mis[led] and drove across, and the law says she won't drive across, I have to tell the jury if she does that, regardless, she is negligent. So that would make it inconsistent. I instruct them, and then [the expert testimony] would be inconsistent with my instructions. To me that creates a doubtful situation; doesn't help the jury at all[;] just confuses them.
Because the court based its decision to exclude the expert testimony on a misconception of the law, we hold that the decision was necessarily an abuse of discretion.
Although we conclude that the court erroneously excluded the testimony, that error is harmless because the inclusion of that testimony would not have resulted in a different verdict. It is true that the court prohibited the expert from specifically stating his opinion that Gaw's conduct was reasonable. However, the expert testified at length that the intersection was very confusing, that many drivers would have been confused by the intersection, and that Gaw was very likely confused by the intersection. The obvious conclusion from the expert's testimony was that Gaw acted reasonably under all the circumstances. Though the court should not have excluded those specific words, the message was clearly communicated in the expert's testimony. Consequently, we hold that even though the court abused its discretion in excluding the testimony, the abuse does not constitute reversible error.

JURY INSTRUCTIONS
The trial court, in three jury instructions, advised the jury that certain actions on the part of a driver constituted negligence. Gaw argues that these types of "per se" negligence instructions are inappropriate and constitute reversible error. We agree with Gaw's position, at least as to one of the court's instructions, and therefore reverse the trial verdict against her.
The parties disagree about whether the violation of a statute or ordinance, such as occurred when Gaw made her illegal turn onto Highway 6, constitutes "per se" or "prima facie" negligence in Utah. *1135 Their confusion is not surprising because Utah appellate courts have also occasionally confused these terms.[6] However, though the terminology has been confused, the concept has remained the same and was succinctly stated in Intermountain Farmers Ass'n v. Fitzgerald, 574 P.2d 1162 (Utah 1978).
[T]he violation of a statute does not necessarily constitute negligence per se and may be considered only as evidence of negligence. ... [The violation] may be regarded as "prima facie evidence of negligence, but is subject to justification or excuse... ."
Id. at 1164-65 (quoting Thompson v. Ford Motor Co., 16 Utah 2d 30, 395 P.2d 62, 64 (1964)) (emphasis added). "Prima facie" negligence is the correct standard and a trial court commits prejudicial error when it gives a jury instruction which provides that the violation of a statute is negligence without the possibility for justification or excuse.[7]Id. at 1164.
The trial court in this case did not contemplate that the standard in Utah is "prima facie." During the trial, at a conference in chambers, the court stated with our emphasis:
Because one of the problems you have is that we give this jury an instruction that says: "If you violate the law, that's negligence. That's not what a reasonable person would do." ... I have to tell the jury if she [violates the law], she's negligent.
Based upon this mistaken view of the law, the court gave three jury instructions which Gaw challenges on appeal.
Instructions 14 and 18 provided:
[Instruction No. 14]: When the law makes it the duty of a driver of one vehicle to yield the right of way to a second vehicle, that duty arises as soon as the two vehicles are close enough to each other to constitute an immediate hazard. Such a hazard exists whenever a reasonably prudent person in the position of the driver of the first vehicle, would apprehend the probability of colliding with the second vehicle if the driver of the first vehicle attempted to proceed on the intended course of travel. Failure to yield the right of way under such circumstances is negligence.
[Instruction No. 18]: A vehicle may not be operated over, across, or within any painted or other dividing space, median or barrier of a divided highway, if such space or median is clearly visible to a reasonably observant person, except where authorized by an official traffic control device or peace officer.
Failure to operate a vehicle in accordance with the foregoing requirement of the law is negligence on the part of the driver.
These instructions, though not framed as "prima facie" instructions, allowed the jury to consider some limited justifications and excuses for the conduct which may be a technical violation of the law. For example, if Gaw could prove that she reasonably did not apprehend the probability of the collision when she proceeded into the intersection, her failure to yield might have been excused under instruction 14. Moreover, her failure to stay off the median strips and painted lines might have been excused under instruction 18 if she could prove that the lines in the intersection were not clearly visible to the reasonably observant person.
It is easy to envision facts not encompassed by the language in instructions 14 and 18 which would nevertheless tend to *1136 justify or excuse the prohibited conduct described in those instructions, making those instructions inappropriate in a range of cases. However, the instructions appear, under the totality of the facts before us, to sufficiently encompass any justifications and excuses that Gaw actually offered at trial for her conduct. Consequently, we hold that instructions 14 and 18 were sufficient, if barely so, under the circumstances of this case.[8]
Unlike instructions 14 and 18, however, jury instruction number 17 does not provide for any justification or excuse. That instruction states:
The operator of a vehicle intending to turn left shall turn onto the roadway being entered, in the extreme left hand available lane for traffic moving in the new direction of travel.
Failure to operate a vehicle in accordance with the foregoing requirements of the law is negligence on the part of the driver.
If the jury found that Gaw had turned left into any lane other than the extreme left lane, the jury had to find Gaw negligent under this instruction. Neither this instruction, nor any other instruction read in conjunction with this instruction, allowed the jury to consider justifications or excuses for the improper turn. This was a strict "per se" instruction and we must therefore reverse on the basis of this instruction.

SUMMARY JUDGMENT
Finally, Gaw argues that the court erred when it granted the state's summary judgment motion. Summary judgment is only appropriate when the moving party has demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c); Transamerica Cash Res., Inc. v. Dixie Power & Water, Inc., 789 P.2d 24, 25 (Utah 1990). Because a challenge to summary judgment presents only questions of law, we review the trial court's decision for correctness, id., and "analyze the facts and inferences in the light most favorable to the losing party." Provo City Corp. v. State, 795 P.2d 1120, 1121 (Utah 1990).
The trial court gave two reasons for granting the state's motion. First, it found the affidavits from Gaw's experts were conclusory and without foundation and therefore did not support the conclusion that the intersection was faultily designed. Second, the court found that Gaw had unambiguously stated in her deposition as initially transcribed that she was not confused by the intersection. The court refused to consider the numerous changes she made to her deposition and ordered them suppressed. The court also refused to consider the assertions in her subsequent affidavit that she was confused, concluding she had not adequately explained the discrepancy on that issue which appeared from her deposition. Consequently, the court found that the design of the intersection was not a cause of the accident.
On appeal, Gaw argues that genuine issues exist as to both the inadequate design of the intersection and to her own confusion. She argues that the experts' affidavits sufficiently demonstrated that the intersection was faultily designed. Moreover, she argues that her original deposition, her amended deposition, and her affidavit all asserted the position that she was confused by the intersection and all should have been considered by the trial court. We now consider each of these arguments.

A. Expert Opinion Concerning Faulty Design

The trial court ruled that the affidavits of Gaw's experts concerning the faulty design of the intersection were inadequate because they were "without foundation as to the highway design and they do not specify what standards the State did not follow or should have followed in this *1137 instance." On appeal, Gaw argues that the court's conclusions were incorrect. Although we are not sure precisely what the trial court found missing from the experts' affidavits,[9] we hold that they adequately complied with the standard we set forth in American Concept Ins. Co. v. Lochhead, 751 P.2d 271 (Utah Ct.App. 1988).
In Lochhead, we articulated a standard for determining the sufficiency of an expert's affidavit in the summary judgment context. First, we stated that Utah Rule of Evidence 704 allowed the expert to state his opinion concerning the ultimate issue in the case. Id. at 273. We then recognized that "[a]n expert affidavit must also contain a sufficient factual basis for the opinion proffered." Id. at 274. See Utah R.Civ.P. 56(e).[10] To determine the extent of the factual basis required, we looked to Utah Rule of Evidence 703 which allows an expert to base an opinion on admissible evidence and inadmissible evidence of the kind that experts in the field use. Id. We concluded that the affidavit was sufficient if it articulated the facts upon which the opinion was based and if the facts were of the "type usually relied upon by experts in the field." Id.
In Lochhead, the expert was a licensed property and casualty claims manager. Id. at 273. His opinion was that American Concept had breached its duties of good faith and fair dealing. Id. That opinion was based upon an examination of American Concept's adjuster's files. Id. We held that because the adjuster's files were the type of materials upon which experts in the field relied, the affidavit was sufficient and, therefore, we reversed the summary judgment. Id. at 274.
Under the Lochhead analysis, the affidavits in this case were sufficient. Gaw's experts each averred to be engineers with some expertise in the area of traffic and/or highway design. Both experts stated in their affidavits that the intersection was dangerous and/or failed to meet safety standards in the industry. The basis for one expert's opinion was his examination of the intersection site. The other expert based his opinion on a diagram of the intersection, police reports and photographs, Gaw's deposition, and traffic court data. Clearly, the facts articulated in the affidavits are the type relied upon by experts in the field. Thus, we hold that the affidavits were sufficient and should not have been disregarded by the trial court. They raise an issue of material fact as to the negligent design of the intersection.

B. Evidence that Gaw was Confused by the Intersection

The state argued that even if the intersection was negligently designed, there was no evidence that Gaw was actually confused by the intersection and thus the intersection's design was not a proximate *1138 cause of the accident. The trial court agreed. Gaw argues that her original deposition, amended deposition, and affidavit all created an issue of fact concerning her confusion and all should have been considered by the court. We will treat each of these three sources separately.

1. Original Deposition
First, Gaw argues that her original deposition alone was sufficient to raise an issue concerning her confusion. We disagree. Gaw was repeatedly asked during her initial deposition whether she was confused by the intersection. She repeatedly stated that she was not.[11]
The only testimony from her initial deposition relied upon by Gaw to demonstrate that she was confused by the intersection is as follows:
Q: Is there anything about the intersection markings or signs that you were unable to understand?
A: Well, it was always confusing there, the way they had the lines going that way, this way, and which way.
Q: What was the confusion?
A: Well, you really just had to watch what you're doing and stay in the lane and watch where you're going, because they were always marked crazy.
This testimony only demonstrates that the intersection required extra attention to successfully navigate it. It does not demonstrate that Gaw was in fact confused on the day of the accident, especially in light of her many statements that she had not been confused. See note 11, supra, and accompanying text. Thus, we hold that Gaw's initial deposition testimony was not sufficient to raise an issue of material fact concerning whether she was confused on the day of the accident.

2. Changes to Deposition Testimony
Gaw attempted to change her deposition testimony in over fifty places. She did so by means of "correction sheets," prepared by herself outside the presence of the court reporter who took the deposition. The reporter filed the sheets along with the deposition as initially transcribed. Some of the changes were merely to clarify and to correct typographical errors but many were substantive. For example, Gaw was asked during the deposition: "Do you have any memory about whether or not, at the time of the accident, you were confused by the lane markings?" In her original deposition, she responded: "No, I don't." In her corrected answers she stated "Yes, I was confused for the lines were changed often." A few lines later she was asked: "That answer you gave to the previous question is, `No, You don't know whether you were confused?'" Initially she responded: "Uh-huh." In her corrected answers she stated: "Yes I was confused, that place is very confusing to anyone." Finally, she was asked: "I want to make sure you're clear on that last question he was asking you. At this time, okay, do you have any memory or do you feel that you were confused by any of these lines in this intersection?" She responded: "Not that I remember. There was  They didn't ever bother me before, I don't remember." She corrected the response to state "Yes, it is very confusing for anyone."
Defendants moved to suppress the changes to Gaw's deposition. The court granted the motion to suppress and consequently did not consider the changed answers in its decision to grant the summary judgment motion. The basis for the court's decision was "that changes to the substance [of] the deposition testimony were entered by plaintiff upon the deposition and not by the officer before whom the deposition was taken as required in Rule 30(e)." *1139 On appeal, Gaw asserts that the court erred in suppressing the deposition changes. We disagree.
Initially, we note that Utah Rule of Civil Procedure 30(e) is drafted very broadly to allow "changes in form or substance which the witness desires to make." Although some commentators have puzzled over the liberality of this rule, see, e.g., Scully, A Brief History of Deposition Editing, 15 Litigation 43 (Spring 1989), courts have generally not limited the number and kinds of changes a deponent can make. See, e.g., Lugtig v. Thomas, 89 F.R.D. 639, 641 (N.D.Ill. 1981) (mem.) (69 changes including many substantive changes); Allen & Co. v. Occidental Petroleum Corp., 49 F.R.D. 337, 339 (S.D.N.Y. 1970) (mem.) (377 changes of which 73 were substantive); De Seversky v. Republic Aviation Corp., 2 F.R.D. 113, 114 (E.D.N.Y. 1941) (34 substantive changes). But see Barlow v. Esselte Pendaflex Corp., 111 F.R.D. 404, 406 (M.D.N.C. 1986) ("manner and number of changes disclose a lack of good faith"). Thus, though defendants grouse about the kinds of changes Gaw made to her deposition testimony, that argument does not support suppression of the changes.
The question before us is whether the court should have suppressed the changes for Gaw's failures to comply with the requirements of Rule 30(e). Rule 30(e) requires that changes "be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them." Utah R.Civ.P. 30(e).
Although courts have allowed liberal changing of deposition testimony, they have been fairly strict in requiring compliance with the technical requirements of Rule 30(e). See, e.g., Sanford v. CBS, Inc., 594 F. Supp. 713, 715 (N.D.Ill. 1984) (mem.) (requiring specific reasons for each change); Lugtig, 89 F.R.D. at 642 (requiring changes to be written in deposition after original answer, specific reasons for changes, and changes to be made by the reporter). That strictness has been tempered somewhat by the willingness of trial courts to permit deponents a further opportunity to comply with the technical requirements of Rule 30(e) rather than simply striking or suppressing attempted changes not in compliance with the rule. In Sanford and Lugtig the courts required the deponent to amend the depositions as per the rule, with the proviso this be done at the deponents' expense. 594 F. Supp. at 715; 89 F.R.D. at 642. Moreover, where changes have been extensive, courts have allowed the opposing party to reopen the deposition for further examination, costs to be paid by the deponent whose changes, after all, created the problem. See, e.g., 594 F. Supp. at 715; 89 F.R.D. at 642. The patience of trial courts in this regard is not, however, boundless. In Barlow, the deponent made over a hundred changes to the deposition, including the deletion of large blocks of the deposition, and failed to provide any reasons for the changes. 111 F.R.D. at 406. Moreover, the changes were so extensive that it was "virtually impossible for the [court] reporter to enter the changes upon the deposition as he is required to do." Id. The court found the Barlow deponent's actions to be "at variance with the letter and spirit of Rule 30(e)" and declared the attempted changes a "nullity." Id.
The facts before us do not warrant the same remedy reached by the Barlow court. Although there were numerous changes to the deposition in this case, many of which were admittedly substantive, Gaw offered some semblance of a specific reason for each. The reporter would not have had difficulty entering them on the deposition. Moreover, the method for making changes employed by Gaw, while at variance with the clear requirements of Rule 30(e), was consistent with the reporter's instructions on the correction sheet given to Gaw.[12] Suppression *1140 of the changes was a drastic remedy which courts usually reject in the absence of bad faith.[13]
However, Gaw's response to the motion to suppress did not include, even in the alternative, a request for an opportunity to comply with the requirements of Rule 30(e) and an offer to reopen the deposition at her expense. She only argued that she was entitled to make the changes in the manner she did. Moreover, on appeal she does not contend she was entitled to alternative relief but steadfastly continues to argue only that her changes were validly made despite her non-compliance with Rule 30(e). The matter being presented in this posture, where appellant did not seek the more moderate response of the Sanford and Lugtig courts either at the trial court nor on appeal, we reject her argument that her deposition changes were properly made and affirm the trial court's decision to suppress them for failure to comply with Rule 30(e). It follows that nothing in her corrected answers was effective to create a factual dispute.

3. Gaw's Affidavit
Gaw submitted an affidavit, along with her memorandum in opposition to the state's motion for summary judgment. The trial court stated that Gaw's deposition demonstrated she was not confused by the intersection and that "the Court will not allow her to change those statements by affidavits ... since she has offered no explanation as to why she would be mistaken at the time of the deposition." Gaw asserts that the affidavit contained an adequate explanation which raised a genuine issue concerning her confusion. We agree.
The general rule in Utah is that an affiant may not "raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy." Webster v. Sill, 675 P.2d 1170, 1173 (Utah 1983). In Webster, the Utah Supreme Court affirmed a summary judgment because the contradictory affidavit "wholly failed to explain the discrepancy between the deposition and the affidavit." Id.
In this case, unlike Webster, Gaw did not wholly fail to explain the discrepancy. According to the affidavit, she had previously thought, including at her deposition, that she was turning into the merge lane of the highway and not into the through lane as was ultimately established. She thought she was properly following the lines through the intersection. She thought the lines had taken her correctly into the merge lane. Moreover, she assumed that the accident had occurred in the merge lane. At her deposition, she understood the questions to reflect these same assumptions, responded to them under these assumptions, and accordingly had no subjective sense of being confused. Only later, according to defendant, did she discover her assumptions were incorrect and that she had actually driven into the through lane meaning to have driven into the merge lane. Therefore, at her deposition, she truly did not believe that she was confused by the intersection, although obviously she was thoroughly confused, having completely misapprehended her route of *1141 travel and what lane she ended up in.[14]
This case is similar to the case of Kennett-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir.1980). In Bone, there was a discrepancy between the affiant's affidavit and his earlier deposition. The court noted that the "affidavit did not purport to raise a new matter, but rather to explain certain aspects of his deposition testimony." Id. at 894. Namely, the affiant explained that certain responses were given under the mistaken assumption that the questions concerned one document when they in fact concerned another. The court was satisfied with the explanation in the affidavit because it was "at least plausible." Id. Cf. Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1364-65 (8th Cir.1983) (opposite result reached where "affidavit was inherently inconsistent with his prior deposition [and] not plausible").
Although the trial court in this case apparently did not believe Gaw's explanation for the discrepancies, we find her explanation is not inherently inconsistent with the responses in her initial deposition.[15] We do not have to be persuaded by the explanation or even find it compelling. As long as it is plausible, the fact finder should be allowed to weigh the credibility of the explanation. See Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir.1986) ("A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility."). Gaw's affidavit raised a genuine issue of fact concerning whether she was confused by the intersection.

C. Summary

The trial court erred in granting the state's summary judgment motion. The expert affidavits adequately raised a genuine issue of fact concerning the negligent design of the highway. Gaw's affidavit raised an issue of fact concerning whether Gaw was in fact confused by the intersection. The credibility of Gaw's final position was one for the trier of fact and not properly disposed of on summary judgment. We accordingly reverse the summary judgment and remand for a trial or other appropriate proceedings.

CONCLUSION
Although the court should have allowed Gaw's human factors expert to testify on the reasonableness of Gaw's conduct prior to the accident, the error was not prejudicial because the expert effectively conveyed his message even without using those magic words. The trial court gave jury instructions under the mistaken assumption that the violation of a statute or ordinance constitutes negligence "per se." It was reversible error to give an instruction to that effect. Finally, the trial court improperly granted the state's summary judgment motion because material issues of fact existed concerning the negligent design of the intersection and concerning whether Gaw was in fact confused by the intersection.
*1142 We reverse and remand for a new trial or other proceedings consistent with this opinion.
DAVIDSON and BULLOCK, JJ., concur.
NOTES
[1] Judge Davidson concurred in this opinion prior to his resignation effective September 1, 1990.
[2] J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (1990).
[3] Gaw brought suit against other defendants, but they were dismissed from the case and are not parties to this appeal.
[4] Gaw also objected to one of the instructions because it did not state Lingle's duty of reasonable care within the instruction. Lingle's duty was adequately defined in other jury instructions and, therefore, we find this argument to be without merit.
[5] Gaw also argues that the trial court excluded testimony concerning the reasonableness of Lingle's conduct. However, the court made no specific ruling on that aspect of the expert's testimony. Thus, nothing in the record suggests that Gaw's expert was prohibited from discussing the reasonableness of Lingle's conduct. Gaw cannot challenge a ruling the court did not make.
[6] Compare, e.g., Jorgensen v. Issa, 739 P.2d 80, 82 (Utah Ct.App. 1987) (using "per se" terminology) with Hall v. Warren, 632 P.2d 848, 850-51 & n. 1 (Utah 1981) (using "prima facie" terminology) (cited in Jorgensen, 739 P.2d at 82).
[7] Trial courts need not and probably should not use the technical term "prima facie" in their jury instructions, at least not without clear explanation of the term. It is sufficient to state that the violation of a statute is evidence of negligence but "subject to justification or excuse if the evidence is such that it reasonably could be found that the conduct was nevertheless within the standard of reasonable care under the circumstances." Thompson v. Ford Motor Co., 16 Utah 2d 30, 395 P.2d 62, 64 (1964). Moreover, as long as the concept is clear from the instructions, the terminology used will not invalidate the instruction.
[8] Although we hold that instructions 14 and 18 were sufficient in this case, we do not mean to suggest that they were in any way ideal instructions which could not be improved upon on remand to more fully explain the role and range of justifications and excuses for the proscribed conduct.
[9] The court's two stated concerns were that the affidavits stated "conclusions without foundation as to the highway design" and that they failed to specify the standards which the state did not follow. Having reviewed the affidavits, we find that they contained both of these elements. As to foundation, both experts identified particular aspects of the intersection and surrounding area which made the intersection misleading and dangerous. As to the applicable standard, one expert stated that the design was "totally in conflict with normal engineering practices." The other expert identified and quoted from two publications dealing with highway safety and design. Consequently, we fail to perceive the deficiencies about which the trial court was concerned.
[10] The rule requiring an expert affiant to state the factual basis for his or her opinion appears to be at odds with Utah Rule of Evidence 705, which allows an expert to give his or her opinion without stating the facts and data upon which he or she relied. However, Rule 705 also recognizes that the expert may have to divulge the basis for his or her opinion if the court requires and if requested upon cross examination. Since an affiant is not subject to cross examination, it makes some sense to require the expert affiant to divulge at least part of the basis for his or her opinion. Stated another way, Utah R.Civ.P. 56(e)'s explicit requirements that affidavits "be made on personal knowledge" and "set forth such facts as would be admissible in evidence," together with its implicit recognition that statements in an affidavit must not be conclusory in form, Norton v. Blackham, 669 P.2d 857, 859 (Utah 1983), and that affidavits not contain unsubstantiated opinions, Treloggan v. Treloggan, 699 P.2d 747, 748 (Utah 1985) (per curiam), control in the summary judgment context over Utah R.Evid. 705.
[11] The following excerpts are illustrative of Gaw's initial deposition testimony:

Q: Mrs. Gaw, when you entered the intersection on the day of the accident, were you confused by anything?
A: No, cause I had driven that two or three times or more.
... .
Q: ... Do you have any memory or do you feel that you were confused by any of these lines in this intersection?
A: Not that I remember. There was  They didn't ever bother me before and I don't remember.
[12] The instructions on the correction sheet stated:

After reviewing the transcript of your deposition, please fill out this correction sheet indicating any changes you deem necessary.
This is a verbatim record of what was actually said and no grammatical corrections should be made. If there are corrections or insertions, please initial the correction sheet and briefly state your reasons therefor. For example, spelling error, clarification, transcriber error, et cetera.
Please do all corrections with typewriter or black ink.
Complying with the instructions on this sheet can hardly be viewed as "bad faith" of the sort which concerned the court in Barlow. See 111 F.R.D. at 406.
[13] The only evidence of bad faith which appears from the record was the false representation to the court that Gaw was suffering from an undiagnosed and untreated diabetic condition during the initial deposition. It is noteworthy that this excuse was not offered on the correction sheet completed by Gaw herself nor in her subsequent affidavit, but appears only in Gaw's memorandum in opposition to defendants' motion to suppress, which was prepared and signed by counsel. Though we do not condone such a false representation to the court, it is better sanctioned under Utah R.Civ.P. 11 where made by an attorney rather than a party. Such an after-the-fact mischaracterization by counsel should not be the basis for the suppression of deposition changes which rule 30(e) so liberally allows. See also note 12, supra.
[14] Gaw's human factors expert gave at trial the following explanation for Gaw's confusion and the discrepancy in the deposition:

[A] person can be mis[led], in which case they're not aware. And if they're not aware they're mis[led], that in that sense, they're really not confused.... [S]omeone on the outside looking at what happened [would say]: "Well, if she did that, it's very likely she was confused but didn't know it." You see, that's the difference. I'm more comfortable with the term `mis[led],' than I am `confused;' because some connotations of the word `confused' would indicate that the person was aware they were confused. But  There's some differences between those two terms.
[15] Many of Gaw's deposition responses are consistent with the explanation in her affidavit of the apparent discrepancies. The following exchange is illustrative:

Q: On the date of the accident, did you use that merge lane?
A: Well, I always did before, but, sir, I don't know. I can't remember whether I went there or what. I pulled out into the center and he was coming and I stopped. That's it. I don't remember after that. I wish to God I did.
Q: What you are telling me, then, is you do not know whether you used the merge lane that you used on prior occasions in driving this same route on the day of the accident?
A: I always had before, so why would I change it for one time?