**SOUTHERN TITLE GUARANTY CO., INC., a Texas corporation, Plaintiffs and Appellants,**

v.

**Glenn L. BETHERS and Tella Mae Bethers, husband and wife, Defendants and Respondents.**

No. 860212–CA.

Court of Appeals of Utah.

Sept. 23, 1988.

Gregory B. Wall (argued), Wall & Wall, Salt Lake City, for plaintiffs and appellants.

S. Rex Lewis, Leslie W. Slaugh (argued), Howard, Lewis & Petersen, Provo, for defendants and respondents.

Before BILLINGS, DAVIDSON and GARFF, JJ.

## OPINION

GARFF, Judge:

Southern Title Guaranty Co. appeals the dismissal of its unjust enrichment action against respondents Glenn J. Bethers and Tella Mae Bethers. We affirm the dismissal.

Appellant is a Texas corporation authorized to do business in Utah. On June 7, 1978, Sunwest II Development Corporation (Sunwest) agreed to purchase land from respondents to develop a subdivision. Respondents and Sunwest signed and recorded a trust deed securing Sunwest's note for $82,950 in favor of respondents.

As part of the agreement, respondents agreed to reconvey title to one lot in the subdivision for each $6,912.50 principal paid towards the note. Initially, respondents executed and delivered to Valley Title twelve request and reconveyance forms, one for each lot in the subdivision. When a particular lot was sold, Sunwest deposited a certificate of deposit with Valley Title. In exchange, it received a reconveyance of the lot using one of respondents' previously executed forms. When the certificate of deposit matured, Valley Title either returned it to respondents or to Sunwest, which cashed it and issued a check for the amount to respondents. The deposit of the certificate of deposit, not the payment of money to respondents, triggered the recon-

veyance of a particular lot. Valley Title Company, as escrow agent, was authorized to release the lots as it received these payments.

After the subdivision was developed, Sunwest sold Lot 1 to Norman Anderson in January 1981. He subsequently sold it to the Martins, who obtained financing with Trans–America Mortgage Company. Appellant, without mentioning respondents' trust deed, issued a mortgagee title insurance policy to Trans–America which insured that Trans–America had a first deed of trust on Lot 1.

The trust deed note came due on July 1, 1981, but Sunwest did not completely pay off the note. Respondents did not receive any payments after August 15, 1981, at which time the principal balance was $13,253.87, an amount equal to the payoffs for Lots 1 and 2.

In 1984, Trans–America foreclosed on the Martins' mortgage and acquired their interest in Lot 1. It then learned that Lot 1 had not been reconveyed nor had the transaction been recorded at the time Norman Anderson bought the lot from Sunwest. Trans–America then demanded, under its title insurance policy, that appellant clear the defect in the title.

Appellant's attorney inquired of Valley Title about the status of Lot 1. On October 10, 1984, Valley Title sent him a letter which stated that Lot 1 had never been paid for. Appellant then elected to pay Valley Title $9,582.60. Upon receipt of these funds, respondents reconveyed Lot 1 to appellant.

Appellant, believing that Lot 1 had been paid for at the time of the original sale to Norman Anderson, and, thus, that respondents had received double payment for the lot, demanded that respondents return the $9,582.60 to it since it was subrogated to Trans–America's rights under the terms of the insurance policy. This action ensued, which was tried without a jury.

Appellant showed that on January 30, 1981, Valley Title delivered a check for $9,267.50 to Sunwest from Norman Anderson's purchase of Lot 1. The check was exchanged for a certificate of deposit.

Evidence showed that Valley Title kept the certificates of deposit in a manila envelope, upon which various employees had, over a period of two years, recorded the date each certificate of deposit was received and released, and the lots to which the certificates of deposit applied. "Lot 1 1–30–81" was written upon this envelope, indicating that Valley Title had received a certificate of deposit for Lot 1 on January 30, 1981. Further, Valley Title had made a small notation on the certificate of deposit as to which lot it applied. The certificate of deposit in question bore, in the lower left hand corner, the notation, "Lot 1." A 5 × 8 inch slip of paper found in the manila folder was an accounting of money owed to respondents and reflected receipts for Lot 1. When the certificate of deposit was redeemed, a cashier's check was made out to respondents for $9,563.38. Respondents acknowledged receipt of the check on August 14, 1981. However, Valley Title did not reconvey Lot 1, but, instead, reconveyed Lot 5.

On May 21, 1986, the trial court dismissed appellant's case with prejudice after its presentation of evidence and prior to respondents' presentation of evidence.

The parties raise the following issues on appeal: (1) Did the trial court err in involuntarily dismissing plaintiff's complaint? (2) Were respondents unjustly enriched when appellant paid them the full purchase price to reconvey Lot 1 after Anderson had already paid Sunwest the full purchase price? (3) Is appellant's payment for the lot voidable on the grounds of mutual mistake of fact? (4) Are respondents entitled to an award of attorney fees for being required to respond to this appeal?

I.

INVOLUNTARY DISMISSAL

Under Utah R.Civ.P. 41(b), the defendant in an action tried without a jury may, after the plaintiff has completed the presentation of his evidence, move for a dismissal on the ground that "upon the facts and the law the plaintiff has shown no right to relief." Rule 41(b) is "appropriately applied when

the trial judge finds that the claimant has either failed to make out a prima facie case or when the trial judge is not persuaded by the evidence presented by the claimant." *Lemon v. Coates*, 735 P.2d 58, 60 (Utah 1987).

Appellant brought its case under the theory of unjust enrichment. To establish unjust enrichment, a plaintiff must show: "(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct.App.1987); *see also Scheller v. Dixie Six Corp.*, 753 P.2d 971, 975 (Utah Ct. App. 1988); *Knight v. Post*, 748 P.2d 1097, 1100 (Utah Ct.App.1988). In defining such circumstances, "[t]he mere fact that a third person benefits from a contract between two others does not make such third person liable in quasi-contract, unjust enrichment, or restitution. *There must be some misleading act, request for services, or the like, to support such an action.*" *Knight*, 748 P.2d at 1101 (emphasis in original) (quoting *Commercial Fixtures and Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977)).

The trial court found that "[o]n or about October 26, 1984, defendants received from plaintiff a check in the amount of $9,582.60"; that "[s]aid check was paid to the defendants by the plaintiff to obtain a request for reconveyance and the reconveyance of Lot 1 of the subject subdivision"; and that "[t]he plaintiff at all times knew that the defendants would not request a reconveyance of Lot 1 unless they were paid the sum of $9,582.60." The trial court thus acknowledged that appellant successfully showed the first and second elements of unjust enrichment, respondents' receipt of and knowledge of the benefit.

However, the trial court also found that "[t]he check ... [from the original sale] was not for the release of Lot 1 from the Deed of Trust as far as the defendants are concerned"; that "[t]he defendants have not been paid twice for the release of the subject lot"; and that "[t]he plaintiff received what it bargained for when it paid the sum of $9,563.38 to defendants and received therefore [sic] a conveyance of Lot 1." It thus concluded that "[t]he defendants have not been unjustly enriched at the expense of the plaintiff." Consequently, appellant did not show the third element of unjust enrichment to the trial court's satisfaction.

■■■ In reviewing involuntary dismissals, we must give great weight to the findings made and the inferences drawn by the trial judge, but must reject his findings if we consider them to be clearly erroneous. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *see also Lemon*, 735 P.2d at 60; *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985). Findings are "clearly erroneous" if they are against the clear weight of the evidence or if we otherwise reach a definite and firm conviction that a mistake has been made. *Walker*, 743 P.2d at 193; *see also Wessel*, 711 P.2d at 253. On the other hand, we do not defer to conclusions of law but review them for correctness. *Id.*

■■■ The evidence supporting the trial court's finding that the check from the original sale was not for the release of Lot 1 so far as defendants were concerned is controverted but, nevertheless, is sufficient to justify the finding. The record clearly indicates that respondents had not received payment on the contract equivalent to the value of Lots 1 and 2. Mr. Wall, vice president of Valley Title, testified that Valley Title did not notify respondents as to which lot it would reconvey upon receipt of a certificate of deposit. He also indicated that there were no written instructions from Sunwest or respondents as to which lots to reconvey upon receipt of payment, including the reconveyance of Lot 1. Respondents had no control over which lot was released in exchange for a specific payment. As far as respondents were concerned, they were still owed $9,582.60 for their property.[1] These facts lead to the

---

1. The trial judge indicated prior to closing arguments that "He [respondent] didn't have any

conclusion that respondents did not engage in the kind of misleading act which would make it unjust for them to retain appellant's payment.

We recognize that the record contains evidence suggesting that a meeting occurred between respondents and a principal of Sunwest, in which respondents directed the reconveyance of Lot 5 rather than Lot 1 after having been paid for Lot 1.

The letter to appellant's counsel from Valley Title, dated October 10, 1984, stated that, "Valley Title Company issued reconveyances on Meadow Creek Estates as directed by the beneficiary, Mr. Bethers. It appears that a partial reconveyance was issued on Lot 5 rather than Lot 1 at Mr. Bether's instructions following a meeting between himself and Mr. Crockett." Similarly, a letter from Valley Title to appellant's attorney, dated November 26, 1984, stated that

> [f]ollowing a meeting between Mr. Bethers and Mr. Crockett, Mr. Bethers instead signed a request for reconveyance on Lot 5 Meadow Creek. A partial reconveyance on Lot 5 was issued, and Lot 1 remained, until the payoff was received from you, unreleased. My understanding is that there was, until your payoff, a balance owing on 2 [sic] lots in Meadow Creek; there were also two lots still encumbered by the trust deed, but these lots were 1 and 2, not 2 and 5.

This evidence could possibly lead to the conclusion that respondents may have controlled the reconveyance of Lot 5 rather than Lot 1 after being paid for Lot 1, thus implying that respondents engaged in a misleading act which could justify a finding of unjust enrichment. However, appellant failed to establish or argue the scope of respondents' participation in the alleged meeting or their degree of control over the reconveyance in question during this meeting. Thus, appellant failed to affirmatively prove its case. "[T]he trial court sitting as finder of the facts [is] entitled at the end of the plaintiff's presentation of evidence to weigh that evidence, and if it found it to be unbelievable or insufficient in some regard, to make a ruling on the merits of the evidence and dismiss the complaint." *Johnson v. Bell,* 666 P.2d 308, 311 (Utah 1983); *see also Wessel,* 711 P.2d at 253; *Lawrence v. Bamberger R.R. Co.,* 3 Utah 2d 247, 282 P.2d 335, 337 (1955). The trial judge was within his discretion to disbelieve this evidence or to give it little weight in determining that "defendants have not been paid twice for the release of the subject lot."

■ The record clearly indicates that "[t]he plaintiff received what it bargained for when it paid the sum of $9,563.38 to defendants and received therefore [sic] a conveyance of Lot 1." By receipt of the October 10, 1984 letter, appellant was, or should have been, put on notice of the possibility that Lot 1 had already been paid for. Nonetheless, appellant, without reserving any rights, making any protest, or even investigating the situation further, voluntarily sent its check to respondents for the reconveyance of Lot 1, and received the reconveyance which it sought. "The rule is well settled that a person cannot recover back money which he has voluntarily paid with full knowledge of all of the facts, without fraud, duress, or extortion in some form." 66 Am. Jur. 2d *Restitution and Implied Contracts* § 93 (1973).

We find that the judge acted within his discretion in finding that appellant failed to prove unjust enrichment.

### II.

### MUTUAL MISTAKE OF FACT

■ Appellant asserts that it became aware of Sunwest's procedure for reconveying lots, and, in particular, the reconveyance of Lot 5 instead of Lot 1 after it tendered the $9,267.50 payment to respondents. It maintains, therefore, that it was operating under a mistake of fact when it tendered the payment, and, thus, its payment should be voidable as a mutual mis-

---

direction in what lot was going to be sold and to whom. That was all on the part of Sunwest. They were the promoters and they were the ones that were selling—they were the salesmen, and he just assumed that everything would be okay."

take of fact. Like the defendant in *Mabey v. Kay Peterson Constr. Co.*, 682 P.2d 287, 289 (Utah 1984), appellant did not raise mutual mistake as a theory of recovery during the trial but presented only its unjust enrichment theory. Therefore, the issue was never before the trial court. It is well settled that issues may not be raised for the first time on appeal, so we do not address this issue.[2] *Rekward v. Industrial Comm'n*, 755 P.2d 166, 168 (Utah Ct. App. 1988); *James v. Preston*, 746 P.2d 799, 801 (Utah Ct. App. 1987).

### III.

### ATTORNEY FEES

■ Respondents allege that they are entitled to an award of attorney fees for being required to respond to this appeal. We do not consider this appeal to be either frivolous or for delay, as specified in Rule 33(a) of the Rules of the Utah Court of Appeals, and, therefore, do not award attorney fees. However, Rule 34(a) of the Rules of the Utah Court of Appeals states that "if a judgment or order is affirmed, costs shall be taxed against the appellant unless otherwise ordered." We, therefore, award costs on appeal to respondents.

AFFIRMED.

BILLINGS and DAVIDSON, JJ., concur.

---

**2.** Although we decline to address this issue in its entirety, we note that mutual mistake of fact requires that both parties be unaware of the fact at issue. The present factual situation is, at best, a unilateral mistake of fact, under which relief may be had only if (1) the mistake is "of so grave a consequence that to enforce the contract as actually made would be unconscionable"; (2) the matter as to which the mistake was made "must relate to a material feature of the contract"; (3) the mistake must have "occurred notwithstanding the exercise of ordinary diligence by the party making the mistake"; and (4) it is possible to give relief by recission without serious prejudice to the other party. *John Call Eng'g. v. Manti City Corp.*, 743 P.2d 1205, 1209 (Utah 1987). Appellant would not be entitled to relief under this test.