**Michael WALKER, Plaintiff and Appellant,**

v.

**UNION PACIFIC RAILROAD CO., a Utah corporation, Defendant and Appellee.**

No. 910218–CA.

Court of Appeals of Utah.

Oct. 2, 1992.

Rehearing Denied Jan. 29, 1993.

Randall Bunnell, James W. McConkie, Richard H. McKeown (argued), Parker, McKeown & McConkie, Salt Lake City, for plaintiff and appellant.

Larry A. Gantenbein (argued), Rene Orosco, Salt Lake City, for defendant and appellee.

Before BENCH, JACKSON and ORME, JJ.

ORME, Judge:

Plaintiff in a personal injury suit appeals the trial court's dismissal of his action for failure to establish a prima facie right to relief. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

Given the posture of the case, we recite the facts as consistent with the evidence put on by appellant in his case-in-chief. On November 7, 1986, appellant was walking to a bus stop to catch a bus to work when a train owned by appellee Union Pacific pulled across an intersection in front of him and stopped, effectively blocking appellant's path. Appellant had recently been released from prison and became concerned that if he missed his bus and arrived late for work, he would be fired and have his probation revoked. Appellant saw no railroad employees on or near the stopped train, and he observed no indication that the train might soon continue through the intersection. Accordingly, after waiting some ten minutes for the train to move, appellant proceeded into the intersection and began to climb over a coupling between two of the stopped rail cars. At the same moment that appellant was positioned over the coupling, the train began to move without warning, and the motion of the rail cars caused appellant's feet to become caught in the coupling. Appellant was severely injured as a result and eventually had to have his right leg amputated below the knee.

Appellant brought suit against Union Pacific, claiming that his injuries resulted from the railroad's negligence. To establish that the railroad acted negligently, appellant hoped to assert at trial that Union Pacific's conduct violated a statutory duty of care conferred upon the company by Salt Lake City Ordinance § 12.100.110. Prior to trial, however, the trial court ruled that the ordinance was both preempted by state statute and void for vagueness. Accordingly, appellant was barred from asserting the railroad's alleged violations of the ordinance as evidence of its negligence.

Alternatively, appellant planned to assert that Union Pacific had violated a common law duty of care owed to appellant. In support of this theory, appellant attempted to introduce expert testimony establishing that Union Pacific had a duty to minimize the possibility of injury to pedestrians and that the railroad had breached this duty. Union Pacific moved to exclude the testimony on the ground that, based upon his deposition, the expert was not aware of any national or industry-wide standards pertaining to the conduct of trains at intersections as concerns pedestrians. The trial court granted Union Pacific's motion and excluded the testimony, deeming it unnecessary to a proper understanding of the case. At the conclusion of appellant's case-in-chief, and upon appellee's motion, the court dismissed the action for failure to establish a prima facie case.[1]

Appellant now challenges (1) the trial court's determination that Salt Lake City Ordinance § 12.100.110 is preempted and void for vagueness, (2) the court's dismissal of the case, and (3) the exclusion of the expert testimony.

## I. ORDINANCE PREEMPTED BY STATE LAW

Salt Lake City Ordinance 12.100.110 states in full, with our emphasis:

---

1. Both the parties and the trial court characterized the court's action as entry of a directed verdict. However, since the case was tried without a jury, the case was actually involuntarily dismissed under Utah R.Civ.P. 41(b). Accordingly, we analyze appellant's appeal as a challenge to the involuntary dismissal.

No railroad company, railroad engineer, railroad conductor, or any other person operating or in control of the movement of any railroad train or locomotive shall cause or permit any locomotive, railroad car, train of railroad cars or any portion thereof to obstruct any intersection between a railroad and public street so as to prevent any *person or vehicle* from crossing the railroad tracks at such intersection for a period longer than five minutes, *except in cases of unavoidable emergencies or impossibility due to the length of such train while moving at a reasonable speed,* in which cases notice shall be given at each such crossing by the engineer, conductor or other employee of the railroad company of such delay by means of a hand-held sign clearly visible to the waiting motorists or pedestrians that such locomotive, railroad car, train or portion thereof will be delayed for more than five minutes at such crossings.

In the instant case, Union Pacific's train had stopped while in the process of setting out a defective rail car—a task which does not appear to fall within the ordinance's category of "unavoidable emergency,"[2] and which definitely does not constitute a "delay resulting from the train's length." Also, Union Pacific gave no notice that the train's delay would exceed five minutes. Appellant hoped to raise both of these apparent violations of the ordinance at trial, but was precluded from doing so by the trial court's ruling that the ordinance was preempted by state law.

### A. Applicable State Law

Utah permits local governments to legislate by ordinance those subjects already covered by state legislation, provided (1) the state has not foreclosed municipal legislation of the subject, and (2) "the ordinance in no way conflicts with existing state law." *Redwood Gym v. Salt Lake County Comm'n,* 624 P.2d 1138, 1144 (Utah 1981). *See State v. Hutchinson,* 624 P.2d 1116, 1121 (Utah 1980); *Allgood v. Larson,* 545 P.2d 530, 533 (Utah 1976). Utah Code Ann. § 10–8–30 (1991) clearly contemplates local legislation concerning train traffic. The statute, with our emphasis, allows municipalities to "regulate the movement of traffic on the streets, sidewalks, and public places, including the movements of pedestrians as well as of vehicles, *and the cars and engines of railroads."* Still, as the *Redwood Gym* opinion makes clear, any local legislation is valid only if not in conflict with existing state law.

Utah Code Ann. § 41–6–95.5 (1988) sets forth six distinct circumstances in which a train may conduct a stop exceeding five minutes at an intersection. Those circumstances are:

(1) when necessary to comply with signals affecting the safety of the movement of trains; (2) when necessary to avoid striking any object or person on the track; (3) when the train is disabled; (4) when the train is in motion or while engaged in switching operations or as determined by local authority; (5) when there is no vehicular traffic waiting to use the crossing; or (6) when necessary to comply with a governmental safety regulation.

Utah Code Ann. § 41–6–95.5 (1988).

### B. Conflict Between Statute and Ordinance

Since, in the instant case, Union Pacific was stopped while disengaging a defective rail car from a train, as required by Federal Railroad Administration Regulations, the stop was clearly permissible under section 41–6–95.5(6). However, as appellant correctly surmised, the same stop appears to have violated the language of the Salt Lake City ordinance. While the term "unavoidable emergency" as used in the ordinance most likely encompasses sev-

---

**2.** Union Pacific does not claim the train was stopped in the intersection, as opposed to some other stretch of track, because the defective car constituted an "unavoidable emergency." Rather, it appears the operation was performed at the intersection because, after the defective car was disengaged, it had to be "set off" onto a siding, and a siding was conveniently available at the intersection.

eral situations contemplated in the statute—i.e., when an extended stop is necessary to avoid striking an object or a person, or when a train is disabled—it is highly unlikely that the term contemplates situations such as the one at issue, in which the train was delayed while voluntarily complying with governmental regulations in a non-emergency situation.[3]

 The lower court's preemption determination is a legal conclusion which we review for correctness, according it no particular deference. *Carter v. Utah Power & Light Co.*, 800 P.2d 1095, 1097 (Utah 1990). However, we concur with the trial court that the Salt Lake City ordinance purports to prohibit extended delays in situations permitted by the statute, and as such conflicts with Utah Code Ann. § 41–6–95.5. We agree that the ordinance, as sought to be applied in this case, is preempted by state law.[4] *See Redwood Gym*, 624 P.2d at 1144.

3. In his brief, appellant asserts that the emphasized language in section 41–6–95.5(4), which allows extended obstruction of intersections "when the train is in motion or while engaged in switching operations *or as determined by local law*," evidences the state's desire for plenary local regulation of trains at intersections. However, as we view the statute's organization and language and, in particular, the legislative history called to our attention in appellant's brief, the drafters of section 41–6–95.5 only intended to let municipalities control the amount of time that *a switching operation* could obstruct an intersection. Thus, appellant quotes Representative Stratford, one of the statute's drafters, as stating, with our emphasis, that, absent the "or as determined by local laws" language, "the local authority has no option to limit the time which a highway may be blocked by a train *during a switching operation* and for that reason I would like to propose an amendment that after the word 'operations' we put in the words 'or as determined by local authority.'" Since Union Pacific's train was involved in a different type of task, i.e., disengaging a defective car for safety reasons, section 41–6–95.5's express delegation of authority does not come into play.

4. Although we are confident that the ordinance is in conflict with existing state law, we are uncertain as to just when the city intends to permit extended stops across intersections. Our uncertainty is due to the ordinance's failure to define the term "unavoidable emergencies."

## II. PROPRIETY OF DISMISSAL

 A defendant in an action tried without a jury may, after the plaintiff has completed the presentation of his evidence, move to dismiss the action if "upon the facts and the law the plaintiff has shown no right to relief." Utah R.Civ.P. 41(b). *See Southern Title Guar. Co. v. Bethers*, 761 P.2d 951, 953 (Utah App.1988). Dismissal under Rule 41(b) is only appropriate when (1) the claimant has failed to introduce sufficient evidence to establish a prima facie case, or (2) the trial court is not persuaded by that evidence. *See id.* at 954 (quoting *Lemon v. Coates*, 735 P.2d 58, 60 (Utah 1987)). In the instant case, Union Pacific's motion for involuntary dismissal was summarily granted because application of the Salt Lake City ordinance is preempted, and, the court concluded, because Union Pacific owed appellant no further duty of care since its conduct was not at odds with the state statute.[5] While we agree with

However, because we uphold the trial court's determination that the ordinance is preempted, we need not rule on the issue of vagueness. *See generally State v. Pelton*, 801 P.2d 184, 186 (Utah App.1990) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964)) (proper test for determining whether a municipal statute is overly vague is whether its language "fails to give a person of ordinary intelligence fair notice" that contemplated conduct is proscribed), *cert. denied*, 156 Utah Adv.Rep. 26 (Utah 1991).

5. At trial, evidence was adduced concerning appellant's assumption of the risk, and the court's Conclusions of Law state that "[p]laintiff's negligence exceeded any negligence of defendant." This statement suggests that the court made a determination of comparative fault, weighing appellant's assumption of the risk against Union Pacific's alleged negligence and concluding that appellant was over fifty percent at fault in the accident. *See generally* Utah Code Ann. § 78–27–38 (1987); *Donahue v. Durfee*, 780 P.2d 1275, 1278–80 (Utah App.1989), *cert. denied*, 789 P.2d 33 (Utah 1990). However, given the court's exclusion of the expert testimony, its conclusion that the railroad owed appellant no duty, and the fact it did not hear the railroad's case, it is clear no such comparative weighing of the parties' fault could have been meaningfully undertaken.

We recognize that, in a very small percentage of cases, a plaintiff's actions might be so absurdly reckless as to justify a court in deciding as a

the trial court's preemption analysis, its second conclusion is incorrect.

In *English v. Southern Pacific Co.*, 13 Utah 407, 45 P. 47 (1896), the Utah Supreme Court established that, when utilizing public crossings, railroads may owe pedestrians a duty of care that transcends any imposed by statute. In *English*, a pedestrian was injured when struck by a train at a crossing. The railroad argued that it was not liable for the pedestrian's injuries, since the train had complied with a state statute requiring trains to ring bells and sound whistles when approaching public thoroughfares, and that "no additional duty was imposed under any circumstances, to prevent injury." 45 P. at 49. The Utah Supreme Court rejected the railroad's argument, however, and held that the railroad had violated a common law duty it owed to pedestrians. The court stated:

> [W]hile the statutes of Utah make some provision for the safety of the public while crossing tracks when crossing over public thoroughfares ..., these statutes will not relieve the railroad company from adopting such other reasonable measures for the public safety as common prudence may dictate, considering the danger, locality, travel, and surrounding circumstances of the case.

*Id.* at 50. Since *English*, breach of this common law duty has been consistently

matter of law—before the defense has put on any evidence—that plaintiff must have been over fifty percent at fault in an accident. In this case, however, such a summary determination is unjustified. Despite his legitimate concern that he would miss his bus, and therefore possibly lose his job and have his probation revoked, appellant first waited ten minutes for the train to move before attempting to climb through it. Also, appellant testified that while climbing between the train cars, he was alert for any whistle or other warning that the train was about to move. From all that appears, appellant's conduct in climbing aboard the train, while certainly not prudent, was undertaken only as a last resort, and was not the type of act that would justify dismissal of an action absent consideration of both parties' duties and possible negligence.

**6.** We note that, since the enactment of Utah Code Ann. § 54–4–15.1 (1990), which requires

recognized as a valid ground for recovery in railroad crossing negligence actions, independent of any statute.[6] *See, e.g., Wilde v. Denver & Rio Grande Western R.R. Co.*, No. C–83–149J, slip op. at 2, 1985 WL 17370 (D.Utah, April 3, 1985) ("a railroad does have a duty to exercise reasonable care in the operation of its trains to avoid injuring the public"); *Duncan v. Union Pacific R.R. Co.*, 790 P.2d 595, 598 (Utah App.1990), *aff'd*, 842 P.2d 832 (Utah 1992); *Gleave v. Denver & Rio Grande Western R.R. Co.*, 749 P.2d 660, 662–64 (Utah App.) (statute relied upon by defendant Rio Grande did not relieve the railroad of its common law duty to operate trains with reasonable care), *cert. denied*, 765 P.2d 1278 (Utah 1988).

Presently, however, a duty of care will not be imposed upon a railroad unless the railroad crossing in question is "more than ordinarily hazardous." *Hobbs v. Denver & Rio Grande Western R.R.*, 677 P.2d 1128, 1129 (Utah 1984). To satisfy this requirement, there must be

> something in the configuration of the land, or in the construction of the railroad, or in the structures in the vicinity, *or in the nature or amount of travel on the highway*, or in other conditions, which renders the warning employed at the crossings inadequate to warn the public of danger.

the Utah Department of Transportation to "provide for the installing, maintaining, reconstructing and improving of automatic and other safety appliances, signals or devices at grade crossings on public highways or roads," railroads have been released from any duty to erect gates or warning devices at a crossing. *See Wilde v. Denver & Rio Grande Western R.R. Co.*, No. C–83–149J, slip op. at 2, 1985 WL 17370 (D.Utah, April 3, 1985); *Duncan v. Union Pac. R.R. Co.*, 790 P.2d 595, 599–600 (Utah App.1990), *aff'd*, 842 P.2d 832 (Utah 1992). However, the Legislature's reallocation of this specific responsibility does not completely abrogate the railroad's basic duty of care. As stated in *Wilde*, "[i]f a crossing is more than ordinarily hazardous, the railroad cannot simply ignore that fact and put the public in peril until the Department of Transportation acts. Until the department acts, the reasonable care standard requires the railroad to take other measures to reduce the risks of a crossing commensurate with the risks it

*Id.* (emphasis added) (quoting *Bridges v. Union Pacific R.R. Co.*, 488 P.2d 738, 739 (Utah 1971)). *See Duncan,* 184 Utah Adv. Rep. at 20, 842 P.2d at 834 ("a crossing might be found to be more than ordinarily hazardous if it was in a thickly populated portion of a city"). Thus, the paramount consideration is whether the "more than ordinarily hazardous" nature of an intersection is such that a reasonable person in the railroad's position would recognize the need for precautionary measures in addition to any which might already exist. *Duncan,* 790 P.2d at 598. *See also English,* 45 P. at 49 (characterizing relevant inquiry as whether the railroad's "conduct in operating this railroad track crossing ... import[s] a want of such attention to the nature and probable consequences of [its] acts as a prudent man ordinarily bestows in his own concern"). We turn now to a consideration of whether the evidence introduced during appellant's case-in-chief was minimally sufficient to establish a prima facie case in this regard.

■ According to appellant's evidence, the crossing in question is located near Union Pacific's switching yard, and as such is heavily traveled by trains throughout the day. The crossing is also near a residential area, a high-school, a "Boys and Girls Club," and a men's post-incarceration residential facility. Appellant and one other witness, a Mr. Young, testified that the intersection was often blocked by trains. Mr. Young also testified that, on several occasions prior to appellant's accident, he had witnessed school children climbing between cars of trains that were blocking the crossing.[7]

Moreover, although state-installed safety gates were in place at the crossing, these gates served primarily to warn traffic that a train was entering the intersection, and to prevent automobiles from crossing the tracks while a moving train was near at hand. It would appear that, in the case of a train parked across an intersection, the gates only confirm the obvious, i.e., that a train is blocking the intersection, and as such are not effective to restrain pedestrians from entering the intersection or to warn that a long-idle train will suddenly lurch forward. *See Duncan,* 184 Utah Adv.Rep. at 20, 842 P.2d at 834 (recognizing that a crossing may be deemed more than ordinarily hazardous "if, for any reason, devices employed at the crossing were rendered inadequate to warn the public of the danger").

■ Employing the rubric of *Hobbs* and the two *Duncan* cases to our consideration of whether appellant established a prima facie case, appellant's evidence tends to suggest that the crossing in question was "more than ordinarily hazardous," both "in the nature and amount of" its pedestrian traffic and the inadequacy of its safety devices or actions to warn pedestrians that a long-standing train was about to move. As such, the evidence establishes a prima facie case that Union Pacific owed appellant a duty of care beyond any imposed by statute. Accepting appellant's evidence as true, as we must for purposes of this appeal, appellant established a prima facie case that Union Pacific owed appellant some additional warning before moving the train.[8]

---

imposes upon the public." *Wilde,* No. C–83–149J, slip op. at 3.

**7.** *See* Vince Horiuchi, *Teen Catches Foot in Train Coupler, Derailing 3 Rail Cars in Salt Lake,* Salt Lake Tribune, November 20, 1991, at B1 (reporting train accident and pedestrian injury occurring from a boy's attempt to climb through a Union Pacific train at the same crossing in November of 1991).

**8.** The longstanding rule in Utah is that "[t]he care to be exercised [by operators of a stopped train] is undoubtedly that degree of care which is reasonably adequate to meet and avoid the dangers which *ought to be anticipated* under the

circumstances." *Gesas v. Oregon Shore Line R. Co.,* 93 P. 274, 278 (Utah 1907) (emphasis added). *See also Gleave,* 749 P.2d at 662–63 (requiring railroads to adopt such "reasonable measures for the public safety as common prudence may dictate") (quoting *English,* 45 P. at 50). In the instant case, appellant's evidence concerning the residential location of the crossing, the number of children thereabouts and their apparently conspicuous practice of climbing between rail cars, the crossing's close proximity to a school, and the duration of the train's stop during a workday morning all indicate that Union Pacific or its employees should have reasonably anticipated the likelihood of impatient pedestrians,

 Since sufficient evidence was introduced to establish a prima facie case that Union Pacific breached its duty to warn appellant before moving the train, we may affirm the trial court's dismissal only if the court found that evidence wholly incredible. *See Southern Title*, 761 P.2d at 954. Here, the record before us gives no indication that the trial court discredited any of appellant's evidence addressing the duty to warn and the breach of that duty. On the contrary, the court appears to have accepted appellant's version of events, but to have found no duty given preemption of the ordinance by state statute and no violation of the statute by Union Pacific.[9] For instance, during the colloquy just prior to granting Union Pacific's motion to dismiss, the trial court stated it would have preferred that the railroad had taken some precaution to avoid appellant's injury, "but that's not the responsibility of this court to impose that kind of duty upon the railroad."

The trial court apparently based its dismissal not on appellant's failure to introduce sufficient *believable* evidence to establish a prima facie case, but rather on the erroneous belief that, as a matter of law, the railroad had no duty whatsoever to warn appellant and others similarly situated that the long-parked train was finally about to move from the intersection. Accordingly, we reverse the dismissal of appellant's case.

## III. EXCLUSION OF EXPERT TESTIMONY

 Utah R.Evid. 702 permits experts to testify as witnesses at trial "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence, or determine a fact in issue." *See Ostler v. Albina Transfer Co.*, 781 P.2d 445, 447 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990). The decision to exclude the testimony of an expert witness is a matter uniquely within the province of the trial court, and will not be reversed absent a clear abuse of discretion. *Id.; State v. Pendergrass*, 803 P.2d 1261, 1265 (Utah App.1990) (quoting *Lamb v. Bangart*, 525 P.2d 602, 607–08 (Utah 1974)). However, an abuse of discretion will be found when a trial court's decision to exclude an expert is induced by a misperception of the law. *Gaw v. State of Utah*, 798 P.2d 1130, 1134 (Utah App.), *cert. denied*, 145 Utah Adv.Rep. 38 (Utah 1990). In the instant case, we believe such an abuse of discretion occurred.

Appellant planned to call as an expert witness Robert Mitchell, a railroad crossing safety expert. Mitchell would have testified at trial that (1) the crossing at which appellant was injured was unusually hazardous, (2) Union Pacific should reasonably have anticipated the likelihood that impatient pedestrians would undertake to climb between rail cars, and (3) as a result, Union Pacific owed appellant a duty to warn him

such as appellant, eventually being moved to climb between rail cars while the train was stopped. Thus, appellant has presented a prima facie case that Union Pacific owed appellant a duty to take "reasonably adequate measures" to warn pedestrians to stand clear of the train before finally moving it.

Appellant testified that if the train had blown its whistle just prior to moving, he would have stayed off it or jumped from it immediately and thereby avoided injury. Given that Union Pacific would bear no expense or burden from such a simple act, and that it would serve as an easily understood warning to individuals of all ages that a train was about to move, it is likely that a long blast of the train's whistle would be sufficient in most situations to discharge a railroad's duty to take reasonably adequate measures to avoid injury to pedestrians before moving a long-standing train through a more than ordinarily hazardous intersection.

9. In its brief, Union Pacific claims appellant was owed no duty of care because he was a trespasser. While we recognize the railroad's right to use the tracks upon which it was stopped, we also acknowledge appellant's legitimate right to use of the public thoroughfare that crosses the tracks. Thus, it appears that the only trespassatory action appellant may have committed was a trespass to chattels by climbing onto Union Pacific's rolling stock. However, the doctrine of trespass to chattels has fallen into general disuse, and even when applied requires that there be some damage to the chattel in question. *See* W. Page Keeton et al., Prosser & Keeton on the Law of Torts, §§ 14–15 at 85–86, 90 (5th ed. 1984). We therefore see no particular relevance to appellant's status as a trespasser. *Cf. Williams v. Melby*, 699 P.2d 723, 726–27 (Utah 1985) (abandoning traditional common law distinctions in context of landowner liability).

344

the train was about to move. In addition, Mitchell would have offered testimony concerning the optimal "reasonably adequate" warning Union Pacific could have given under the specific facts of this case. *See Gesas v. Oregon Short Line R. Co.*, 33 Utah 156, 93 P. 274, 278 (1907).

The trial court excluded Mitchell's testimony on the ground that, since Mitchell was not aware of any national or industry-wide standards pertaining to the conduct of trains at intersections vis-a-vis pedestrians, his testimony was "unnecessary" to a proper understanding of the case. However, as stated above, the appropriate inquiry when determining whether a railroad owes a pedestrian a duty of care is whether the specific crossing at issue is more than ordinarily hazardous, such that a reasonable person in the railroad's shoes would have perceived the need to provide some warning in addition to any already in place at the crossing. The lack of national or industry-wide standards does not itself resolve the inquiry of whether this particular crossing was unusually hazardous. Accordingly, the court's exclusion of Mitchell's testimony was based on a misperception of the relevant law. *See Gaw*, 798 P.2d at 1134.

We acknowledge that, since this opinion recognizes the "reasonably adequate measures" standard of care as the applicable legal duty owed by railroads to pedestrians at unusually hazardous crossings, Mitchell's testimony would be irrelevant to a determination of the legal duty owed by Union Pacific to appellant. Therefore, even though the court's exclusion of Mitchell's testimony was based on a misperception of the law, we would nonetheless affirm that exclusion if, as a result of this opinion, all of the matters to which Mitchell would have testified had been resolved. *See Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 825–26 & n. 8 (Utah App.1989) (expert testimony unnecessary when applicable standard of care has been fixed as a matter of law by judicial decision), *cert. denied*, 789 P.2d 33 (Utah 1990).

However, we have not set the precise nature and scope of the warning owed to appellant under the circumstances of this case. Instead, we leave the determination of those factual matters to the trial court. If plaintiff's prima facie case withstands Union Pacific's defense and the trial court's credibility determinations, and it is conclusively established that Union Pacific did indeed owe appellant a duty to warn, Mr. Mitchell's testimony may well prove valuable to the court's deliberations concerning precisely what measures Union Pacific should have taken to satisfy its legal duty. For that reason we reverse the exclusion of his testimony. *See id.* (expert testimony particularly helpful in establishing relevant standard of care as a factual matter).

CONCLUSION

The trial court correctly determined Salt Lake City Ordinance 12.100.110, as sought to be applied to this case, was preempted by state law. However, the trial court erred in dismissing the case, since appellant adequately established a prima facie case that Union Pacific breached its common law duty to warn appellant and other pedestrians that the train was about to move. The court's exclusion of Mr. Mitchell's testimony was also in error, because the exclusion was based upon a misperception of the law. Accordingly, we affirm the trial court's determination that Salt Lake City Ordinance 12.100.110 is invalid in the context of this case, reverse the dismissal of the action and exclusion of expert testimony, and remand for further proceedings consistent with this opinion.

On remand, the court as factfinder should focus its inquiry on four issues. First, after hearing Union Pacific's case, it must determine whether a duty of care was owed by Union Pacific—i.e., whether the intersection was unusually hazardous given the volume of train and pedestrian traffic at the crossing, the claimed foreseeability that certain pedestrians would attempt to climb through the train during extended delays, and the apparent inadequacy of existing safety measures to protect pedestrians. Second, if a duty of care was owed, the court must determine the scope of that duty in a factual sense—i.e., what reasonably adequate warning the railroad could have given "to meet and avoid the dangers

which ought to [have been] anticipated under the circumstances," *Gesas*, 93 P. at 278. Third, since this opinion holds only that appellant has established a *prima facie* case that Union Pacific breached a duty to warn, such that dismissal under Rule 41(b) was inappropriate, the court must consider whether that prima facie case withstands Union Pacific's presentation of evidence.[10] Finally, if the court determines Union Pacific was indeed negligent at all, the court must weigh the parties' comparative negligence and determine whether, under the facts of this case, appellant's assumption of the risks involved in climbing aboard the train outweighed Union Pacific's negligence in failing to give the appropriate warning.

BENCH, J., concurs.

JACKSON, Judge (concurring specially):

I concur in Part I and the result of the main opinion only. I do not fully agree with the duty of care analysis in Part II, in the context of determining whether Plaintiff's evidence established a prima facie case. The language concerning a "warning," in the text and footnotes 8 and 10, unnecessarily expands Defendant's duty of care and exposure to liability.

---

10. For instance, the railroad may put on convincing testimony that the train engineer actually blew the whistle, or that the railroad otherwise discharged any duty owed to appellant before moving the train. Or the railroad may show, contrary to appellant's evidence, that pedestrians do not regularly cross its tracks at that location in such numbers or under such conditions as would render the intersection unusually hazardous.