Earl L. GROSSEN, Plaintiff and Appellee,

v.

Derel K. DeWITT and Afton H. DeWitt, Defendants and Appellants.

No. 981280–CA.

Court of Appeals of Utah.

May 20, 1999.

Brian K. Haws and Gordon W. Duval, Duval, Hansen, Witt & Morley, LLC, Pleasant Grove, for Appellants.

Russell A. Cline, Crippen & Cline, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

ORME, Judge.

¶1 Appellants seek reversal of the trial court's dismissal of their counterclaim granted at the close of their case-in-chief. Because the facts as found by the trial court support dismissal, we affirm, even though appellants proved a prima facie case.

## FACTS

¶2 In 1993, appellants Derel K. and Afton H. DeWitt entered into an agreement with Mary Ada Grossen, now deceased, and appellee Earl L. Grossen to purchase a parcel of property in Payson, Utah. Under that agreement, appellants signed a promissory note, which was secured by a trust deed in favor of the Grossens. Although required under the trust deed, appellants failed to (1) pay property taxes on the property for 1993, 1994, and 1995; (2) maintain fire insurance on the property; and (3) make all payments required by the note. On September 19,

1995, the trustee began nonjudicial foreclosure proceedings with a Notice of Default describing the three ways in which appellants had defaulted:

> A breach of an obligation for which the Trust Property was conveyed as security has occurred. The nature of such breach is that each of the amounts specified below have not been paid. Each of the amounts specified below is required to be paid ....
>
> Principal and Interest in the amount of $1,011.32 as of September 12, 1995;
>
> Taxes or assessments levied on real property by any taxing authority; and
>
> Amounts necessary to maintain adequate fire insurance on improvements on the Trust Property.

¶ 3 On January 25, 1996, more than ninety days after the notice of default was filed, Ogden DeWitt, a relative of appellants, contacted Earl Grossen to learn what was required to cure the default. Grossen informed Ogden DeWitt that $1,617 was currently in arrears and that the taxes must be paid and the property insured. Ogden DeWitt and Grossen entered into what Grossen characterized as a "tentative agreement," whereby the default would be treated as cured and the trust deed reinstated, even though the three month cure period had run, *see* Utah Code Ann. § 57–1–31(1) (1994), if Ogden DeWitt payed the arrearage, immediately brought the property taxes current, and insured the property. No written document memorialized this agreement. Shortly thereafter, Ogden DeWitt tendered two checks to Grossen totaling $1,617, the amount in arrears, which Grossen never cashed. However, neither appellants nor Ogden DeWitt paid the property taxes then owed or obtained insurance for the property. On February 19, 1996, the trustee held a sale at the appointed time and place and, because no additional bidders were present, Grossen bid in the amount remaining due on the note. In exchange, the trustee executed a trustee's deed conveying the property to Grossen.

¶ 4 Because appellants remained on the property, on April 1, 1996, Grossen filed an unlawful detainer action to evict them and recover the rental value of the property while wrongfully in their possession.[1] Appellants filed an answer and counterclaimed, alleging breach of the contract entered into between Ogden DeWitt and Grossen and seeking to set aside the trustee's sale.[2] The case proceeded to a bench trial. At the close of appellants' case-in-chief, Grossen moved for a directed verdict on their counterclaim, arguing that no cure occurred; Grossen made no agreement to cure; and any such agreement would be unenforceable under the statute of frauds. The trial court agreed and "directed a verdict" for Grossen, concluding that any agreement to cure or modify a notice of default must be in writing to be enforceable under the statute of frauds.

## STANDARD OF REVIEW

■ ¶ 5 Our review of the trial court's factual findings is strictly limited. *See 50 West Broadway Assocs. v. Redevelopment Agency,* 784 P.2d 1162, 1171 (Utah 1989). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a). We thus defer to the trial court's findings concerning the parties' verbal agreement if supported by the evidence. *See Lyngle v. Lyngle,* 831 P.2d 1027, 1029 (Utah Ct.App.1992). Our deferential review does not change in light of the procedural context from which this appeal arose.

## DIRECTED VERDICT OR DISMISSAL?

[2] ¶ 6 Although Grossen initially characterized his motion as one for a directed verdict on appellants' counterclaim and the trial court purported to grant a directed verdict, we look past a motion's label to its substance and treat it accordingly. *See In re*

---

1. Neither side appeals the disposition of Grossen's unlawful detainer complaint, which resulted in an order placing him in possession and a judgment for damages.

2. Appellants' standing to enforce the contract as third-party beneficiaries is not seriously challenged on appeal.

*Adoption of Baby K.*, 967 P.2d 947, 948 n. 1 (Utah Ct.App.1998) (" '[T]he substance, not caption, of a motion is dispositive in determining the character of the motion.' ") (quoting *Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1310 n. 2 (Utah Ct.App.1994)). Without question, Grossen's motion is properly viewed as a motion to dismiss.

¶ 7 By its terms, a directed verdict under Rule 50 of the Utah Rules of Civil Procedure contemplates only a jury trial. *See Walker v. Union Pac. R.R.*, 844 P.2d 335, 338 n. 1 (Utah Ct.App.1993). *See also* Francis J. Carney, *Practice Pointers: Motions at Trial—and After*, Voir Dire: Issue of the Utah B.J., Summer 1997, at 17, 17–18 ("As its name implies, the motion for directed verdict is used only in jury trials and should not be confused with its bench trial equivalent, the Rule 41(b) motion."). "Verdict" refers to the "formal decision or finding made by a jury." *Black's Law Dictionary* 1559 (6th ed.1990). Thus, the term "directed verdict" applies when the judge "orders the jury to return a verdict" for the moving party because, as a matter of law, "the party with the burden of proof has failed to make out a prima facie case." *Id.* at 1560. Because the trial court may not usurp the jury's factfinding role, "a party who moves for a directed verdict has the very difficult burden of showing *no* evidence exists that raises a question of material fact" and the court should deny the motion when any evidence exists raising such a question, " 'no matter how improbable the evidence may appear.' " *Alta Health Strategies, Inc. v. CCI Mechanical Serv.*, 930 P.2d 280, 284 (Utah Ct.App. 1996) (quoting *Kleinert v. Kimball Elevator Co.*, 905 P.2d 297, 299 (Utah Ct.App.1995)), *cert. denied*, 936 P.2d 407 (Utah 1997).

¶ 8 In the context of a bench trial, however, where there is no jury verdict, the directed verdict's procedural counterpart is a motion to dismiss. *See* 75A Am.Jur.2d *Trial* § 855 (1991) ("When a case is tried by the court without a jury, and a defendant moves for a judgment at the close of the plaintiff's case, the defendant is seeking an involuntary

dismissal, not a directed verdict."). Rule 41(b) provides in relevant part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that *upon the facts* and the law the plaintiff has shown no right to relief. The court *as trier of the facts* may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court *shall make findings* as provided in Rule 52(a).

Utah R. Civ. P. 41(b) (emphasis added).[3] Under Rule 41(b), the court may dismiss if "(1) the claimant has failed to introduce sufficient evidence to establish a prima facie case, or (2) the trial court is not persuaded by that evidence." *Walker*, 844 P.2d at 340. As with a directed verdict, whether dismissal was appropriate for failure to make a prima facie case is a question of law reviewed for correctness. *See Sorenson v. Kennecott–Utah Copper Corp.*, 873 P.2d 1141, 1144 (Utah Ct.App.1994).

¶ 9 Unlike with a directed verdict, however, because the court sits also as fact finder, it may weigh the evidence, consider credibility, and dismiss if it finds that although plaintiff's evidence establishes a prima facie case in the technical sense, it is unpersuasive. *See id.*; *Walker*, 844 P.2d at 340. "In effect, the rule allows the trial court ' "to weigh the evidence, to draw inferences therefrom and, if it finds the evidence insufficient ... to render a decision for the defendant on the merits." ' " *Sorenson*, 873 P.2d at 1144 (citations omitted). Thus, the court need not wait until a defendant's essentially superfluous case has been presented to end the trial. A plaintiff who otherwise deserves to lose is simply not entitled to a shot at proving his case on cross-examination or at having the adverse party bumble into proving it for him.

---

3. This provision applies equally to counterclaims. *See* Utah R. Civ. P. 41(c).

¶ 10 Because the trial in this case granted the motion to dismiss after hearing the counterclaimants' evidence and finding it unpersuasive, we "give great weight to the findings made and the inferences drawn by the trial judge," and reverse those findings only if clearly erroneous. *Southern Title Guar. Co. v. Bethers*, 761 P.2d 951, 954 (Utah Ct.App.1988). *Accord* Utah R. Civ. P. 52(a). Further, because appellants do not challenge the court's findings, let alone demonstrate they are clearly erroneous, we " ' "assume[ ] that the record supports the findings of the trial court and proceed to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." ' " *Interwest Constr. v. Palmer*, 923 P.2d 1350, 1358 (Utah 1996) (citations omitted).

## PROPRIETY OF DISMISSAL

¶ 11 Appellants argue the trustee's sale of the property should be set aside because Ogden DeWitt entered into an agreement with Grossen which is either outside the statute of frauds or enforceable under the partial performance exception.[4] However, because we conclude Ogden DeWitt failed to fully and timely perform his obligations under the agreement as found by the trial court, we need not address the application of the statute of frauds or its exceptions.

¶ 12 In this case, the trial court found that after the January 25, 1996 conversation, Grossen had a "tentative agreement" with Ogden DeWitt whereby if Ogden DeWitt paid the arrearage and "immediately br[ought] current all unpaid taxes and insure[d] the Property," Grossen would treat the default as cured. This was an offer for a unilateral contract[5] requiring Ogden DeWitt to perform in three ways: (1) paying the arrearage, (2) paying the taxes, and (3) insuring the property. The offer further imposed a time requirement by demanding a part of the performance—paying the taxes and insuring the property—to be accomplished "immediately." Although Ogden DeWitt tendered checks for the payment arrearage, he never paid the taxes or insured the property, let alone did he do so immediately, as required. Accordingly, even assuming the statute of frauds is inapplicable for whatever reason, Grossen had no duty to perform pursuant to the "tentative agreement" found by the trial court. Given the trial court's factual findings about the terms of the parties' verbal agreement, to which we defer, the court correctly granted the motion to dismiss appellants' counterclaim.[6]

## CONCLUSION

¶ 13 We hold that the trial court, sitting as trier of fact, did not err in granting Gros-

4. In their brief, appellants equate their agreement with a cure of the default. However, an agreement alone does not cure a default. *See* Utah Code Ann. § 57-1-31(1) (1994) (providing that "the trustor ... *may pay* ..., and thereby cure the default," not that the trustor may *agree* to pay) (emphasis added). Further, the two checks tendered by Ogden DeWitt after January 25, 1996 failed to cure the default because the taxes remained unpaid and the property remained uninsured. *See id.* (providing that when in default, "including a default in the payment ... of any installment of principal, or by reason of failure of the trustor to pay, in accordance with the terms of the trust deed, *taxes*, [or] *premiums for insurance*, ... the trustor ... may pay to the beneficiary or his successor in interest *the entire amount then due* ..., and thereby cure the default") (emphasis added).

5. Because the trial court found the agreement was only tentative, it necessarily concluded that Grossen did not agree to exchange a promise to immediately treat the default as cured for Ogden

DeWitt's mere promise to perform. That is, if Grossen did not require full and timely performance by DeWitt as a condition precedent to his own performance, upon exchanging promises they would have entered a then-binding bilateral contract and thus the agreement would in no sense have been "tentative." *See Aquagen Int'l Inc. v. Calrae Trust*, 972 P.2d 411, 413 (Utah 1998). The result here, however, would not change even if Grossen had entered into a bilateral contract with Ogden DeWitt because Ogden DeWitt's failure to perform would still relieve Grossen of his duty to perform. *See id.* at 414 ("When one party to a valid contract commits an 'uncured material failure' in its performance of the contract, the non-failing party is relieved of its duty to continue to perform under the contract.") (quoting Restatement (Second) of Contracts § 237 (1981)).

6. In view of our disposition, we have no occasion to address the trial court's allegedly premature release of the lis pendens recorded by appellants.

sen's motion to dismiss appellants' counter-claim at the conclusion of their case-in-chief. The trial court's factual findings show that Grossen offered to treat appellants' default as cured if Ogden DeWitt paid the arrear-age—which he did, *and* immediately paid the taxes due and insured the property—which he did not. Because DeWitt failed to perform in the manner and time prescribed, Grossen had no duty to treat the appellants' default as cured.

¶ 14 Affirmed.

WE CONCUR: BILLINGS, Judge and DAVIS, Judge.

